

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-82,876-01

### EX PARTE BRYAN ELLIOTT PALMBERG, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### IN CAUSE NO. 1121345-A FROM THE
### 179TH DISTRICT COURT OF HARRIS COUNTY

YEARY, J., delivered the opinion for the Court in which KELLER, P.J., and KEASLER, HERVEY, RICHARDSON, and NEWELL, JJ., joined. ALCALA, J., filed a dissenting opinion in which MEYERS and JOHNSON, JJ., joined.

### O P I N I O N

Applicant pled guilty to one count of possession of a controlled substance, namely cocaine, and the trial court sentenced him to ninety days' confinement in county jail. He did not appeal his conviction. Seven and a half years later, however, Applicant filed the instant post-conviction application for writ of habeas corpus under Article 11.07 of the Texas Code

of Criminal Procedure. TEX. CODE CRIM. PRO. art. 11.07.[1] He now claims his guilty plea was involuntary because, at the time he entered it, he mistakenly believed that, if he proceeded to trial, the State would be able to prove the substance he possessed was cocaine. When this Court received the application, we remanded it to the trial court for supplemental findings of fact.[2] After remand, we ordered the application to be filed and set for submission to determine whether a guilty plea is involuntary when the defendant mistakenly believes that certain inculpating evidence would be available for use against him should he proceed to trial. We also required that both parties brief the issue.

## BACKGROUND

On June 17, 2007, Houston Police Officer J. C. Masaba saw Applicant trespassing at a Burger King restaurant in Harris County. Masaba noticed that applicant seemed intoxicated and arrested him for public intoxication. Searching Applicant incident to the arrest, Masaba

---

[1] Applicant was convicted of a state jail felony. TEX. HEALTH AND SAFETY CODE § 481.115 (b). He was sentenced to ninety days' confinement in county jail, however, which is less than the time required under a state jail felony punishment. *See* TEX. PENAL CODE §12.35(a) (punishment for a state jail felony is "any term of not more than two years or less than 180 days"). Under certain conditions "a court may punish a defendant who is convicted of a state jail felony by imposing the confinement permissible as punishment for a Class A misdemeanor[.]" TEX. PENAL CODE § 12.44 (a). In *Ex parte Sparks*, we held that a felony *conviction* is all that an applicant must show for a claim to be cognizable in post-conviction habeas corpus proceedings, even if the actual offense was a misdemeanor. 206 S.W.3d 680, 682 (Tex. Crim. App. 2006). Taken together, Section 12.44(a) of the Penal Code and *Sparks* support the proposition that a state jail felony conviction that is punished as if it were a Class A misdemeanor is still subject to collateral attack in an Article 11.07 post-conviction application for writ of habeas corpus.

[2] The purpose of the remand was to allow the trial court to make a determination whether the substance found on Applicant's person at the time of arrest had been analyzed by a forensic laboratory.

found a substance in Applicant's left front pants pocket. Masaba conducted a field-test on the substance and, based on the test results, tentatively determined that the substance was cocaine. Two days later, Applicant waived his right to be charged by indictment and was charged by information with the state jail felony offense of possession of a Penalty Group 1 controlled substance in an amount less than a gram. TEX. HEALTH & SAFETY CODE § 481.115(b). On that same day, June 19, 2007, he entered a judicial confession and pled guilty to that offense and was sentenced to confinement for ninety days in the county jail, which he subsequently served.[3] Applicant now alleges he has suffered, and continues to suffer, collateral consequences stemming from his conviction. He claims he is susceptible to denial of housing and denial of federal and state benefits, as well as use of the conviction for future punishment enhancements and as a basis to deny parole or to increase or deny bail. He also claims other economic, emotional, and physical disadvantages.

On September 14, 2009—roughly two years after the guilty plea—a laboratory analyst for the Houston Police Department attempted to analyze the substance found on Applicant at the time of his arrest. But, because Masaba had used up all of the substance found on Applicant at the time of his arrest for presumptive testing, there was no remaining unprocessed sample available for laboratory analysis. For this reason, it could not be confirmed whether or not the substance actually was cocaine. The next day, September 15, 2009, the Houston Police Department Crime Laboratory sent a letter to the Harris County

---

[3] In his judicial confession, Applicant asserted that he understood the allegations in the indictment against him and confessed that "they are true[.]"

District Attorney explaining that, when Masaba conducted the field-test, he used the entire visible substance found on Applicant, and there was no unprocessed sample left over for the laboratory to analyze.[4] Applicant was unaware of this information at the time of his plea. More than four years later, on May 27, 2014, the Harris County District Attorney's Office located the letter that was sent from the laboratory and forwarded it at that time to the Harris County Public Defender's Office.[5] On January 27, 2015, Applicant filed this application for writ of habeas corpus, contending that his plea was involuntary.

Applicant contends that his plea of guilty was involuntary because, had he known at the time of the plea that none of the substance found on his person was left to be tested in a laboratory, he would not have pled guilty. He claims that, without the laboratory analysis of the substance, the State would have had no evidence at trial.[6] The State agrees that the

---

[4] The trial court's original recommended findings of fact erroneously stated that the sample was analyzed and that the analysis did not indicate the presence of any controlled substance. This Court remanded to the trial court to clarify the contradiction between the trial court's findings and the letter sent from the Houston Police Department Crime Laboratory. It has now been determined that the letter depicts the accurate version of events regarding the sample: The laboratory did not analyze the substance because there was no unprocessed sample left to analyze.

[5] It is unclear from the record why, after receiving the letter in 2009, the Harris County District Attorney's Office did not forward it immediately instead of almost five years later. The State claims it located the letter during a "comprehensive review of controlled substance variance cases," but this does not explain why it was not disclosed to Applicant during the five years preceding the comprehensive review. It is possible that the State simply did not think that such information, discovered two years after the guilty plea, was significant in 2009—five years before our decision in *Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014). Regardless, there seems to have been no vindictiveness on the part of the State, a notion further substantiated by the fact that the State turned the letter over immediately upon the discovery in 2014.

[6] The trial court's recommended conclusions of law include a conclusion that the results of a presumptive chemical field test performed by an officer in the field is inadmissible at trial. For

defendant is entitled to relief.[7] The trial court agreed that the decision to plead guilty was not a voluntary and intelligent choice and recommended that this Court allow Applicant to withdraw his plea in accordance with *Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014).

## THE LAW

An agreement to plead guilty entails a waiver of three significant constitutional rights: The right against self incrimination; the right to confrontation; and the right to a trial by jury. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). Because such significant constitutional rights are at stake, due process requires that their relinquishment in the course of a guilty plea be undertaken voluntarily, with sufficient awareness of the consequences. *McCarthy v. United States*, 394 U.S. 459, 466 (1969). A defendant "must have sufficient awareness of the relevant circumstances," and must possess an understanding of the law in relation to the facts. *Id.* To determine whether a defendant's "awareness" was "sufficient" at the time of his plea, a reviewing court looks to whether the plea was a voluntary and intelligent choice among the alternative courses of action open to the defendant. *State v. Guerrero*, 400 S.W.3d 576, 588 (Tex. Crim. App. 2013).

But a defendant need not have a comprehensive awareness of the specific impact that relinquishing his constitutional rights may have; sufficient awareness does not require

purposes of resolving Applicant's claim, we will assume without deciding that this is correct.

[7] This Court is not bound by such a confession of error. *Garza v. State*, 213 S.W.3d 338, 350 (Tex. Crim. App. 2007) (citing *Saldano v. State*, 70 S.W.3d 873, 884 (Tex. Crim. App. 2002)).

complete knowledge of the prosecution's case. In *United States v. Ruiz,* 536 U.S. 622, 625-26 (2002), the United States Supreme Court upheld the constitutionality of a federal "fast track" plea bargain process whereby the defendant agreed to waive his due process right to the pretrial disclosure of impeachment information. The Supreme Court concluded that Ruiz's ignorance of potential impeachment information did not render his guilty plea involuntary for due process purposes. *Id*. at 629. The Supreme Court observed that

> the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it. A defendant, for example, may waive his right to remain silent, his right to a jury trial, or his right to counsel even if the defendant does not know the specific questions the authorities intend to ask, who will likely serve on the jury, or the particular lawyer the State might otherwise provide.

*Id*. at 629-30. A guilty plea does not violate due process, the Supreme Court observed, even when the defendant enters it while operating under various misapprehensions about the nature or strength of the State's case against him—for example, misestimating the likely penalty, failing to anticipate a change in law respecting punishment, miscalculating the admissibility of a confession, or misjudging the availability of a potential defense. *Id*. at 630-31.

The cases *Ruiz* cites amply support this proposition. For example, in *Brady v. United States*, 397 U.S. 742, 757 (1970), the defendant's attorney gave reasonable advice, "in light of the then applicable law[,]" that the jury would be able to sentence him to death under the pertinent statute. This advice turned out to be incorrect based on a subsequent Supreme Court

decision in *United States v. Jackson*, 390 U.S. 570 (1968). *Brady v. United States*, 397 U.S. at 756. The defendant in *Brady v. United States* argued that, because his plea was given in ignorance of the subsequent decision in *Jackson*, it was involuntary. 397 U.S. at 756. The Supreme Court disagreed, finding there to be "no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions."*Id.* at 757.

*McMann v. Richardson* is a case cited in *Ruiz* with facts even more analogous to Applicant's circumstances. There the Supreme Court addressed a defendant's claim that "a coerced confession induced his plea[.]" The Supreme Court regarded it, however, as "at most a claim that the admissibility of his confession was mistakenly assessed and that . . . his plea was [therefore] an unintelligent and voidable act." 397 U.S. 759, 769 (1970). The Supreme Court observed that "[t]he Constitution . . . does not render pleas of guilty so vulnerable." *Id.* The Court reasoned that when a "defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, *he assumes the risk [of] ordinary error in either his or his attorney's assessment of the law and facts.*" *Id.* at 774 (emphasis added).[8]

---

[8] That is not to say that, if a defendant's counsel misinforms him with regard to some critical fact, he may not raise a separate Sixth Amendment challenge to the adequacy of counsel's representation during the plea bargaining process. *See, e.g.*, *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) ("Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process.").

It is in the light of these holdings that we must determine whether Applicant's plea of guilty was intelligently and voluntarily made. Is a plea involuntary because the defendant pled guilty under the mistaken belief that specific evidence would be available for use against him at trial? We believe such a plea is not necessarily involuntary.

**APPLICATION OF LAW TO FACTS**

Applicant claims "no rational defendant, positively knowing that the State cannot prove every element in a criminal prosecution, would plead guilty to an offense." Applicant's Brief at 9. He argues that his plea was involuntary because he would not have pled guilty to the offense had he known that there was not enough substance left to test. But, even accepting the veracity of Applicant's assertion, this does not necessarily establish that his plea was involuntary. *See Brady v. United States,* 397 U.S. at 749–50 (merely showing that the defendant's miscalculation of the penalty provision was a "but for" motivation for the plea of guilty did not necessarily establish that the plea was an involuntary act).

As the Supreme Court's cases described above make clear, the voluntariness of a defendant's guilty plea is not contingent upon his awareness of the full dimension of the prosecution's case. While any defendant who is deciding whether or not to plead guilty would certainly prefer to be apprised of his exact odds of an acquittal at trial, the reality is that every defendant who enters a guilty plea does so with a proverbial roll of the dice. Naturally, the more information the defendant acquires beforehand about the prosecution's case, the better informed his decision to plead guilty will be, providing him the opportunity

to make a "wise" plea. *Ruiz*, 536 U.S. at 629. But even if the defendant is less well-informed, as long as he has a sufficient awareness of his circumstances—including an awareness that some facts simply remain unknown to him or are undetermined as of the time of the plea—his potentially unwise plea is still a voluntary one.

There could be any number of situations in which evidence the defendant initially thought admissible is actually inadmissible, a witness thought to be available is actually unavailable, or, as in this case, evidence thought to be subject to forensic testing is, in fact, not testable. The correct question for due process purposes is not whether Applicant knew every fact relevant to the prosecution of his case. Rather, the correct question is whether he was aware of sufficient facts—including an awareness that there are or may be facts that he does not *yet* know—to make an informed and voluntary plea.[9]

As the Supreme Court further observed in *Ruiz*, practical considerations also warrant such an interpretation of "voluntariness" for guilty plea purposes. The issue of what process is due in the plea bargain context, according to the Supreme Court, must also take into account "the adverse impact of the [proposed] requirement upon the Government's interests." *Ruiz*, 536 U.S. at 631 (citing *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985)). Therefore, we must

---

[9] Imagine the following hypothetical: The prosecution is discussing a potential plea bargain with a defendant. The prosecution has a star witness that will all but ensure a conviction for the State. The prosecutor, truthfully, tells the defendant about this star witness in the hope of inducing the defendant to plead guilty. Unbeknownst to either party, right before the defendant accepts the plea bargain, the star witness dies in an automobile accident. The defendant then, not knowing the prosecution's case is significantly diminished, accepts the plea bargain. This plea should not be considered "involuntary." Every defendant that pleads guilty does so with the implicit understanding that conviction at trial is never certain. The same understanding applies to Applicant in this case.

consider whether the rule that Applicant would have us adopt might "seriously interfere with the Government's interest in securing those guilty pleas that are factually justified, desired by defendants, and help to secure the efficient administration of justice" by requiring the Government to "devote substantially more resources to trial preparation prior to plea bargaining, thereby depriving the plea-bargaining process of its main resource-saving advantages." *Id*. at 631-32. Taking Applicant's argument to its logical extreme would require mandatory laboratory testing for *all* drug possession cases, whether those cases ultimately proceeded to trial or not—quite possibly an even greater hardship than the disclosure of impeachment information that was at issue in *Ruiz*. Simply put, a requirement that a defendant be completely informed about every fact relevant to his prosecution at the time of his plea (even facts that no one directly involved in the plea process—*including the prosecutor*—could possibly yet know) would impose an untenable and undesirable burden on the institution of plea bargaining.

For that matter, such a requirement would often work to the detriment of defendants themselves, who frequently benefit from plea agreements that occur early in the plea negotiation process. Were we to adopt Applicant's proposed rule, the State would likely be reluctant to tender any favorable "fast track" plea bargain agreements for fear that those agreements would be vulnerable to "voluntariness" challenges on appeal or collateral attack. Indeed, it could potentially deprive both parties of the benefits of so-called "fast-track" plea bargains altogether. *See Ruiz*, 536 U.S. at 625. Due process considerations mandate neither

a comprehensive development of the State's case for trial nor a completion of the pre-trial discovery process before either party can enjoy the benefits of a mutually beneficial plea bargain agreement.[10]

All of this is not to say that we would never grant an uninformed Applicant relief. If an applicant was affirmatively led to believe that the substance could definitively be tested due to misrepresentations by the State,[11] or perhaps because of ineffective assistance of counsel,[12] then his plea might be constitutionally challengeable. But neither the record nor Applicant's brief suggests any prosecutorial misrepresentation or ineffectiveness of defense counsel. Perhaps Applicant knew that law enforcement possessed the substance found on his

---

[10] Indeed, a defendant could receive a very favorable sentence because, before all the evidence is available, he rolls the dice and accepts a favorable plea bargain that the State offers—the very kind of "fast track" plea bargain that was involved in *Ruiz*. 536 U.S. at 625. If a drug sample in a prosecution for drug possession tests positive for a controlled substance, it is entirely possible that a defendant could be convicted at trial and receive a less favorable sentence than he would in an expedited plea bargain. But if the State will be forced to test the sample as a prerequisite of that plea bargain, it might not be so willing to cut a favorable deal, knowing that it will have been put to the trouble of gathering all the evidence needed for a conviction. In the early stages of prosecution, before all evidence has come to light, a defendant may be able to bargain for a better deal than would be available after the accumulation of more evidence. Essentially, a defendant can benefit from these situations in which the sufficiency of the evidence at trial is still speculative. He should not be able to backtrack after his conviction simply because it later comes to light that, had he taken his case to trial, the evidence might have been insufficient to convince a fact-finder that he was guilty beyond a reasonable doubt.

[11] *See Brady v. United States,* 397 U.S. at 755 ("[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats . . . *misrepresentation* . . . or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business.") (citing *Shelton v. United States*, 246 F.2d 571, 572 n. 2 (C.A. 5th Cir. 1957)) (emphasis added).

[12] *See* note 8, *ante*.

person at the time of arrest, but he did not know whether or not it had been tested, or even whether or not it could have been tested. So long as Applicant was aware that this was still an unknown variable in his prosecution—so long as he knew what he did not know—then he was sufficiently aware of the relevant circumstances surrounding his case. The fact that his roll of the dice did not turn out as favorably as it might have had he proceeded to trial is not a ground for invalidating his plea.[13]

Finally, this case is factually distinguishable from *Mable*, 443 S.W.3d 129 (Tex. Crim. App. 2014), upon which Applicant principally relies. There, the Court explained:

> it [a guilty plea] cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. This means that the defendant must have sufficient awareness of the relevant circumstances. The standard is whether the plea is a voluntary and intelligent choice among the alternative courses of action open to the defendant.

*Id*. at 131 (internal quotation marks, footnotes, and citations omitted). The appellant in *Mable* pled guilty to possession of a controlled substance, but forensic testing conducted after the guilty plea demonstrated that the substance "did not actually contain any illicit materials."

---

[13] Indeed, his roll of the dice could very well have turned out favorably! Applicant was charged with a state jail felony, TEX. HEALTH AND SAFETY CODE § 481.115 (b), which carries a sentence of confinement in state jail for not less than 180 days. TEX. PENAL CODE § 12.35(a). But Applicant still received only 90 days' confinement as a result of his plea. This reduction in punishment is one of the significant features of the plea-bargain system. A defendant takes a lesser sentence without putting the State to the burden of a trial, and the State saves resources and protects its interest in an efficient and administratively feasible justice system. Allowing such a defendant to undo his plea because the State's evidence turned out to be insufficient would be similar to a poker player wanting to undo his fold upon realizing that his opponent did not have a winning hand. A defendant cannot claim involuntariness just because he wrongly guessed what was in the State's "hand" for trial.

*Id*. at 130. "This fact is crucial to this case," we explained, because "operating under such a misunderstanding, the applicant cannot be said to have entered his plea knowingly and intelligently." *Id*. at 131.

Applicant has presented no evidence suggesting that the facts of his case were not exactly what all the parties involved in the case believed them to be at the time he entered his plea. He does not demonstrate that he was under any misapprehension about the true nature of the substance he possessed or that he was insufficiently aware of any fact that was "crucial to this case[.]" *Id*. at 131. He demonstrates only that he was unaware of the unavailability of certain forensic evidence that might or might not have substantiated his judicial confession. A defendant such as Mable, who has pled guilty because he believed he had committed a specific offense, when objective and essentially irrefutable facts demonstrate that he did not commit that offense, has not made an informed choice. Here, by contrast, the record does not demonstrate that Applicant mistakenly believed he was guilty; it shows no more than that he may have overestimated the State's ability to ultimately *prove* he was guilty in the absence of his judicial confession.[14] Under these circumstances,

---

[14] In *Alford v. North Carolina*, 400 U.S. 25 (1970), the defendant pled guilty to a lesser included offense of the capital offense with which he had been charged even though he protested his innocence during the plea colloquy. The Supreme Court regarded this as a sufficiently intelligent plea because it was made with an awareness of the compelling evidence of guilt that the State had amassed against him. The Supreme Court observed:

> When [Alford's] plea is viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered, its validity cannot be seriously questioned.

Applicant cannot be said to have demonstrated that his plea was not knowingly and intelligently entered.

## APPLICANT'S ANALOGIES

Applicant attempts to analogize his particular situation to other scenarios in which we have held that a post-conviction habeas applicant is entitled to relief. Such scenarios include when the State presents false evidence at trial, when the State fails to disclose exculpatory evidence before trial, and when a defendant discovers previously unobtainable evidence completely exonerating him of the charged crime. Although the common element among these grounds for relief is due process, the due process concerns that undergird such grounds

---

*Id*. at 37-38 (citation omitted). Indeed, Texas law requires the introduction of "sufficient evidence to support" a guilty plea. TEX. CODE CRIM. PROC. art. 1.15. In a case such as Mable's, where later evidence utterly undermines the pleader's judicial confession, there is nothing substantial to support the guilty plea, and it cannot be said that it was entered intelligently. Here, by contrast, there was no evidence to undermine Applicant's judicial confession, which was alone sufficient to support his guilty plea. *Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009). While the evidence against him *other than* his judicial confession may not have been compelling, as in *Alford*, in light of the State's ultimate inability to verify the results of the field test, it cannot be said that Applicant's judicial confession was demonstrably false or that he made that confession in the absence of definitive proof that it was inaccurate. It bears repeating that

> [t]he rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case[.] * * * We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought[.]

*Brady v. United States*, 397 U.S. at 757.

for relief are different. It is therefore important to identify the due process concerns that we consider when granting relief on these grounds before determining whether Applicant's analogies are apt. Finally, Applicant also analogizes his case to Sixth Amendment claims of ineffective assistance of counsel during the plea-negotiation stage of a prosecution. After reviewing Applicant's arguments in turn, we conclude that his particular set of circumstances does not fit any scenario in which this Court typically grants relief.

### 1. Use of False Evidence

First, Applicant relies on cases in which we have granted relief because the prosecution secured a conviction through the deliberate or even inadvertent use of false evidence. *Ex parte Carmona*, 185 S.W.3d 492 (Tex. Crim. App. 2006); *Ex parte Chabot*, 300 S.W.3d 768 (2009). But these cases do not stand for the proposition that a defendant's plea is involuntary simply because he is unaware of a material fact. Rather, the rationale behind these cases is that the use of perjured or false testimony will render a conviction invalid because it drastically compromises the *fairness* of the *trial*. Because the trial is the main event of our criminal judicial system, due process puts a premium on the fairness of the proceeding by which a factfinder assesses guilt or innocence.

In the plea bargain context, due process focuses not on the fairness of trial but on the integrity of the process by which the defendant is persuaded to *forego* trial. Has he *knowingly* and *voluntarily* waived both his constitutional right to trial and the many attendant constitutional rights that are themselves designed to maximize the fairness of trial?

*McCarthy,* 394 U.S. at 466.[15] Admittedly, whether the plea was voluntary and whether the plea-bargain process was fair can involve overlapping considerations. Certainly, the State going so far as to misrepresent information to induce a plea would be unfair and, under *Brady v. United States*, it would also render the plea involuntary. 397 U.S. at 755. But we have never held, up to this point in time, that a merely potentially unfair plea—perhaps, for example, induced by the State *inadvertently* representing false information—should automatically results in a reversal.[16] Voluntariness and fairness are two distinct issues and must be treated as such. Having already decided that Applicant's plea was voluntary, we look next to whether a lack of fairness at the pretrial stage of prosecution can warrant granting relief on due process grounds, and whether Applicant was even treated unfairly to begin with.

It is unclear to what extent a defendant, at least so far as the United States Constitution is concerned,[17] is afforded protection on the basis of fairness in the pre-trial phase of a

---

[15] Clearly, there is still *some* interest in fairness at the plea bargaining stage. For example, the State cannot obtain a guilty plea through deliberate misrepresentation. *See Brady v. United States,* 397 U.S. at 755. The case law explaining how much protection is afforded a defendant at the plea-bargaining stage under this notion of fairness, however, is not completely developed. *See Ruiz*, 536 U.S. at 629 (limiting analysis to whether impeachment material must be disclosed during plea-bargaining negotiations, but not answering the question whether all exculpatory material must be disclosed during plea-bargaining negotiations).

[16] Even if we had held as much, Applicant makes no showing here that the State made any representation to him at all concerning the availability of the substance he possessed to be tested or used against him at his trial.

[17] Obviously, states are free, through their own constitutions or statutes, to provide greater protection for defendants in the pre-trial phase of prosecution. See *Heitman v. State*, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991) ("The federal constitution sets the floor for individual rights; state constitutions establish the ceiling.") (quoting *LeCroy v. Hanlon*, 713 S.W.2d 335, 338 (Tex. 1986)).

prosecution. But the Supreme Court in *Ruiz* suggested fairness is less of a concern in the pre-trial context:

> "We do not believe the Constitution here requires provision of [impeachment] information to the defendant prior to plea bargaining—for most (though not all) of the reasons previously stated. That is to say, in the context of [the] agreement, the need for [impeachment] information is more closely related to the *fairness* of a trial than to the *voluntariness* of the plea; the value in terms of the defendant's added awareness of relevant circumstances is ordinarily limited."

536 U.S. at 633. Indeed, other cases have similarly downplayed the importance of fairness-based transparency during the plea bargain process. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case and *Brady* did not create one; as the Court wrote recently, 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded[.]'") (citing *Wardius v. Oregon*, 412 U.S. 470, 474 (1973); *see also Ruiz*, 536 U.S. at 630 (finding that, although "the more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision and the wiser that decision will likely be[, the] Constitution [still] does not require the prosecutor to share all useful information with the defendant[,]" and also finding that "knowledge of the prosecution's potential case [is] a matter that the Constitution does not require prosecutors to disclose").

But even assuming that the same kind of considerations that inform our notion of the fairness that society demands at trial could also warrant more protection for defendants at the plea-bargaining stage, the use of false or perjured testimony at trial is certainly quite different

from what occurred in Applicant's case. Applicant has not shown that the State used false or misleading evidence to induce his plea, knowingly or otherwise. Knowing exactly as much as the State did—that there was a substance found during the search incident to arrest that may or may not be subject to later testing in a forensic laboratory—Applicant was sufficiently aware of the relevant circumstances to enter an intelligent and voluntary plea of guilty. That the substance later proved to be untestable did not impugn the fairness or integrity of the process by which he chose to forego his right to trial and embrace the evident benefit of the State's plea offer.

## 2. *Brady* Claims

Applicant also attempts to analogize his case to cases in which prosecutors fail to disclose exculpatory information prior to a guilty plea, citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *Brady v. Maryland* is yet another case in which the Supreme Court has held that due process cannot tolerate an unfair proceeding—namely, a trial in which the prosecution knows of and fails to disclose exculpatory information. *Id*. at 86-87. Whether the right to *Brady* information extends to the pretrial stage of prosecution, however, is still an open question.[18]

---

[18] It is unclear whether or not *Brady v. Maryland* goes so far as to render guilty pleas involuntary if the prosecution does not disclose exculpatory information at the time of the plea, especially after the Supreme Court's holding in *United States v. Ruiz*. While the language of *Brady v. Maryland* might indicate that it does, a further analysis might lead to the conclusion that it does not. *See Brady v. Maryland* 373 U.S. at 86-87 ("This ruling is an extension of *Mooney v. Holohan*, 294 U.S. 103, 112 [(1935)], where the Court ruled on what nondisclosure by a prosecutor violates due process[.] * * * The principle of *Mooney v. Holohan* is not punishment of society for misdeeds of a prosecutor but avoidance of an *unfair trial* to the accused. Society wins not only when the guilty

But even assuming that the constitutional mandate to disclose exculpatory evidence to defendants under *Brady v. Maryland* extends to the plea bargaining stage of a prosecution, it certainly cannot apply where there is no exculpatory evidence to disclose. It is undisputed that the State did not know that the substance found on Applicant could not be tested in an accredited laboratory. Therefore, we find no occasion to reach the question whether *Brady* material must be disclosed before a plea bargain is made. Applicant simply fails to show that he should be granted relief under the same rationale that requires disclosure for purposes of trial under *Brady v. Maryland*.

### 3. Actual Innocence

Applicant also attempts to draw an analogy between his claim and actual innocence

---

are convicted but when criminal *trials are fair*[.]") (emphasis added). *See also Robertson v. Lucas,* 753 F.3d 606, 621 (6th Cir. 2014) ("We have not yet had occasion to determine whether *Ruiz* applies to exculpatory *Brady* material, a question that has caused some disagreement among our sister circuits. *Compare United States v. Ohiri*, 133 Fed.Appx. 555, 562 (10th Cir. 2005). ('[T]he Supreme Court did not imply that the government may avoid the consequence of a *Brady* violation if the defendant accepts an eleventh-hour plea agreement while ignorant of withheld exculpatory evidence in the government's possession.') *and McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003) ('*Ruiz* indicates a significant distinction between impeachment information and exculpatory evidence of actual innocence.'), *with Friedman v. Rehal*, 618 F.3d 142, 154 (2d Cir. 2010) ('[T]he Supreme Court has consistently treated exculpatory and impeachment evidence in the same way for the purpose of defining the obligation of a prosecutor to provide *Brady* material prior to trial, and the reasoning underlying *Ruiz* could support a similar ruling for a prosecutor's obligations prior to a guilty plea.') (internal citations omitted) *and United States v. Conroy,* 567 F.3d 174, 179 (5th Cir. 2009) ('*Ruiz* never makes such a distinction nor can this proposition be implied from its discussion.')."). *See also Ruiz*, 536 U.S. at 633-634 (Thomas, J., concurring) ("The [Supreme] Court . . . suggests that the constitutional analysis [of withholding evidence] turns in some part on the 'degree of help' such information would provide to the defendant at the plea stage . . . a distinction that is neither necessary nor accurate . . . The principle supporting *Brady* was 'avoidance of an unfair trial to the accused.'"); *id.* at 631 (Majority Opinion) ("It is difficult to distinguish, in terms of importance, (1) a defendant's ignorance of grounds for impeachment of potential witnesses at a possible future trial from (2) varying forms of ignorance at issue in these cases.").

claims, relying on *Ex parte Tuley*, 109 S.W.3d 388 (Tex. Crim. App. 2002), and *Ex parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1996). Unlike a *Brady* claim or a claim that the State knowingly or inadvertently used false evidence to obtain a conviction, a claim of actual innocence does not implicate the fairness of the trial proceeding. Rather, it is concerned with the *accuracy* of the *result*.[19] Of course, actual innocence claims can be used to challenge even a conviction obtained by a guilty plea. *Tuley*, 109 S.W.3d at 392. What places the outcome of such a prosecution in doubt, however, is the discovery of new exculpatory evidence in light of which it may be said, by clear and convincing evidence, that no reasonable jury would have convicted him. *Elizondo*, 947 S.W.2d at 209. Applicant has shown no such discovery in this case. A comparison of those actual innocence cases with Applicant's case reveals that they do not control here.

In *Elizondo*, the appellant was convicted after a trial at which the State relied solely upon the testimony of the defendant's step-son Robert, an alleged victim in the case along with his younger brother. 947 S.W.2d at 209. Thirteen years later, Robert and his brother claimed that Robert falsely testified against his step-father because of threats and manipulation by his natural father. *Id.* at 210. Similarly, in *Tuley*, the defendant pled guilty and then learned later on that the complainant "had consistently recanted her allegations since before his trial." 109 S.W.3d at 395–96. "To support the recantation the applicant submitted

---

[19] *See Robbins*, 360 S.W.3d at 463 (Price, J., concurring) ("[D]ue process will not tolerate stigmatizing and punishing an individual who can definitively demonstrate that he did not commit the crime for which he has been convicted. Thus, actual innocence is concerned with the accuracy of the original proceeding.").

affidavits from the complainant, from the complainant's best friend at the time the allegations were made, A.S., and the complainant's boyfriend at the time the allegations were made, B.G." *Id.*

In this situation, however, Applicant does not have any new evidence that shows that he was innocent. Applicant can say only that, because the substance cannot be tested, the evidence *might* be legally insufficient to prove it was a controlled substance. That does not amount to new evidence that establishes Applicant's innocence; nor does it necessarily put the accuracy of Applicant's judicial confession and subsequent conviction in question.[20] The probability that the substance he possessed was cocaine remains unchanged. Therefore, the accuracy of the conviction is not impugned, and we cannot grant Applicant relief under an actual innocence rationale.

### 4. State Knowledge/Ineffective Assistance of Counsel

Finally, Applicant claims that, "[i]f the State had possession of the laboratory report [explaining that the substance could not be tested] at the time of Applicant's plea or even if the defense lawyer had simply failed to investigate an existing lab report, Applicant would have a clear avenue for relief." Applicant's Brief at 15. If Applicant could show that, when he entered his guilty plea, the State knew about and hid the fact that the substance could not be tested, then the issue presented in this case would be different. But we know that was not

---

[20] In the plea papers, Applicant acknowledged that he understood the allegations in the information alleging that he possessed cocaine, and he "confess[ed] that they are true[.]" *See* TEX. CODE CRIM. PROC. art. 1.15 (requiring the State to introduce evidence sufficient to support a guilty plea).

the case here because it is undisputed that the laboratory did not find out that the substance could not be tested until 2009, two years after the plea. We have no occasion at this time to address what should happen if an applicant were to demonstrate that the State knew about and concealed the fact that contraband could not be tested prior to a guilty plea.

Turning to the ineffective counsel analogy, we could concede that Applicant might be entitled to relief if he could demonstrate that his counsel failed to investigate the proof that the State would actually have at trial. But before we could determine whether defense counsel erred by encouraging a plea in Applicant's situation, we would need to inquire into the specific facts surrounding counsel's representation of Applicant. Whether encouraging the plea constituted ineffective assistance of counsel could turn, for example, on counsel's appraisal of the evidence at the time of the plea. If counsel urged Applicant to accept the State's plea offer without adequately assessing the State's case and without mentioning the fact that laboratory testing was not yet complete, then Applicant might have a colorable Sixth Amendment argument that he was induced to plead by his counsel's incompetence. If, however, counsel warned Applicant about the fact that testing had not been completed, but still encouraged Applicant to accept the benefits of the State's plea offer *even after* apprising Applicant of all relevant circumstances, we would be hard pressed to conclude that counsel's strategic advice fell below the standard of professional competency.[21] In any event, Applicant

---

[21] If a defendant were to readily admit to his counsel that the substance he had possessed was contraband and that any future forensic testing of the substance would undoubtedly bear that out, counsel might well choose not to wait for the results of forensic testing before advising his client to embrace the benefits of a favorable "fast track" plea offer from the State. "[S]trategic choices made

does not bring an ineffective assistance of counsel claim in this writ application, nor has he explicitly alleged any incompetence on the part of trial counsel. For that reason, we limit our analysis and holding today to the voluntariness argument in his application. Nothing about trial counsel's advice in this case has been shown to render Applicant's guilty plea involuntary.

## CONCLUSION

For all the reasons discussed above, we deny relief.

DELIVERED:    February 24, 2016
PUBLISH

---

after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).