

# In the Court of Criminal Appeals of Texas

---

No. WR-95,674-01

---

## EX PARTE SHARAY AUDRETTE THOMAS,

*Applicant*

---

On Application for Writ of Habeas Corpus
In Cause No. 1388776-A
In the 262nd District Court
Harris County

---

YEARY, J., filed a dissenting opinion in which KELLER, P.J., joined.

In May of 2013, Applicant was arrested for delivering cocaine to Gerald Goines, then a narcotics officer with the Houston Police Department. Two days after her arrest, Applicant pled guilty to delivery of less than one gram of a controlled substance, a state jail felony. TEX. HEALTH & SAFETY CODE §§ 481.112 (establishing delivery of less than

one gram of a penalty group one controlled substances as a state jail felony), 481.102(3)(d) (designating cocaine as a penalty group one controlled substance). She was convicted and was sentenced to 180 days' confinement in the state jail.[1]

Nearly six years after Applicant's plea, in March of 2019, the Harris County District Attorney sent a letter to Applicant disclosing that Goines had been relieved from duty and was under criminal investigation. According to Applicant's unsworn declaration, she did not receive this letter and was unaware of Goines's record of misconduct until she was contacted by her appointed counsel, the Harris County Public Defender's Officer. With the assistance of counsel, Applicant filed the instant application for writ of habeas corpus in March of 2024.

Applicant pleads two grounds for relief in her application. First, she alleges that the State violated her due process rights by using materially false evidence to induce her plea of guilty. Specifically, under the test established by this Court in *Ex parte Coty*, Applicant argues that Goines's claims against her must be presumed false and that the State cannot rebut this presumption of falsity. 432 S.W.3d 341 (Tex. Crim. App. 2014); *Ex parte Mathews*, 638 S.W.3d 685 (Tex. Crim. App. 2022). But for the use of this evidence against her, she argues, she would not have pled guilty. *Ex parte Barnaby*, 475 S.W.3d 316 (Tex. Crim. App. 2015). Second, Applicant alleges that her guilty plea was involuntary.

---

[1] Applicant long ago completed her sentence, but she has established collateral consequences "sufficient to establish 'confinement' so as to trigger application of art. 11.07." *Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010).

In particular, she argues that Goines was a member of the prosecution team whose misconduct the State had a duty to disclose to her prior to her plea, under *Brady v. Maryland*, 373 U.S. 83 (1963)—whether the individual prosecutor was actually aware of that misconduct or not. Consequently, she argues, she lacked sufficient awareness of the relevant circumstances surrounding the entry of her plea to make it knowing and voluntary.[2]

The convicting court concludes that Applicant is entitled to relief on both grounds alleged in her application. The Court agrees and today grants Applicant relief by setting aside her judgment. Majority Opinion at 2. For the reasons explained below, I believe granting Applicant on either ground she alleges is, at least, premature. Therefore, I must dissent from the Court's opinion.

## I. MATERIALITY

First, I do not believe that Applicant has yet carried her burden to prove that the use of any false evidence against her was material to her decision to plead guilty. *Coty* established that when an applicant in a drug case can satisfy a five-part test focused on misconduct by a forensic analyst, the Court will presume that the testimony and/or

---

[2] *See Ex parte Palmberg*, 491 S.W.3d 804, 807 (Tex. Crim. App. 2016) (quoting *State v. Guerrero*, 400 S.W.3d 576, 588 (Tex. Crim. App. 2013)):

> A defendant "must have sufficient awareness of the relevant circumstances," and must possess an understanding of the law in relation to the facts. . . . To determine whether a defendant's "awareness" was "sufficient" at the time of h[er] plea, a reviewing court looks to whether the plea was a voluntary and intelligent choice among the alternative courses of action open to the defendant.

evidence presented against the applicant by the analyst is false.[3] In *Mathews*, the Court extended the *Coty* presumption to "cases involving police officers who display a pattern of mendacity in obtaining drug arrests and convictions[.]" 638 S.W.3d at 690. Thus, when an applicant demonstrates that (1) a police officer who (2) "has committed multiple instances of intentional misconduct in another case or cases" (3) is the same state actor as in the current case, (4) has previously committed "the type of misconduct that would have affected the evidence in the applicant's case[,]" and (5) acted in the applicant's case "within roughly the same period of time as the other misconduct[,]" the Court will infer that evidence derived from that officer is false. *Id.* at 690–91. When the State fails to rebut that inference, the Court will go on to inquire whether the use of the presumptively false evidence was material. *Id.* at 689; *Coty*, 418 S.W.3d at 605.

The applicant, of course, continues to shoulder the additional and exclusive burden of showing the materiality of the false evidence. *Mathews*, 638 S.W.3d at 691. Accordingly, in *Barnaby*, the Court decided that when an applicant claims she has entered an involuntary plea based on the use of false evidence, the question is "whether there is a

---

[3] The relevant questions under *Coty*, 418 S.W.3d at 605, are whether:

(1) the technician in question is a state actor, (2) the technician has committed multiple instances of intentional misconduct in another case or cases, (3) the technician is the same technician that worked on the applicant's case, (4) the misconduct is the type of misconduct that would have affected the evidence in the applicant's case, and (5) the technician handled and processed the evidence in the applicant's case within roughly the same period of time as the other misconduct.

reasonable likelihood that [the false evidence] affected the defendant's decision to plead guilty[.]" 475 S.W.3d 316, 325. In other words: "Would the defendant, knowing of the falsity of the evidence, still have plead guilty or would [s]he have insisted on going to trial? If [s]he would have chosen trial, the false evidence was material." *Id.* at 325–26.

I do not doubt that Applicant can satisfy the requirements of *Coty/Mathews* so as to invoke the Court's presumption of falsity with regard to Goines's own allegations against her. But the record in this case also suggests that other evidence, at least potentially, might corroborate Goines's version of events. If other credible evidence could have independently shown Applicant's guilt, even without Goines's testimony, then the credibility of Applicant's claim that she would have insisted on going to trial but for Goines's false allegations against her is suspect.

Specifically, in his own incident report, Goines notes that three other narcotics officers, Officers Armstrong, Jacobs, and Jones, were working in the same area as Goines on the day of Applicant's arrest. Goines also reports that a Sergeant Haney was present at Applicant's arrest and recovered a rock of cocaine that Applicant spit out of her mouth during her arrest.[4] Did any of these other officers witness Applicant deliver drugs to Goines? Could the testimony of these other officers have demonstrated Applicant's guilt without depending on

---

[4] While Goines's personal accusation against Applicant may be rightly presumed false, I am not aware that his record of misconduct includes falsely listing other officers as having been involved in an arrest who were not. Moreover, while the record includes a disclosure notice of misconduct by Officer Armstrong, there is no similar notice for Officers Jacobs or Jones or Sergeant Haney.

testimony from Goines? I would remand this case with instructions to the convicting court to obtain testimony from Jacobs, Jones, and Haney in answer to these questions. Until then, I cannot join the Court in its conclusion that Applicant has satisfied her burden of proving materiality.

## II. *BRADY V. MARYLAND*

Second, Applicant's involuntary plea claim is predicated on her argument that the disclosures required by *Brady v. Maryland*, 373 U.S. 83 (1963), apply to guilty plea cases—a legal question this Court has not yet squarely decided. In *Brady*, the Supreme Court of the United States held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution." *Id.* at 87. The Supreme Court has since held that the duty to disclose impeachment and exculpatory evidence applies even without a request by the accused. *Strickler v. Greene*, 527 U.S. 263, 280 (1999). And "the individual prosecutor has a duty to learn of any favorable evidence known only to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

Nevertheless, in *United States v. Ruiz* the Supreme Court concluded that "the Constitution does *not* require the Government to disclose material *impeachment* evidence prior to entering a plea agreement with a criminal defendant." 536 U.S. 622, 633 (2002) (emphasis added). The question arises, then, whether the information about Goines's past misconduct, that was only more recently disclosed

to the Applicant by the State, is mere *impeachment* evidence that was not required to be disclosed, or whether it might indeed be more properly characterized as *exculpatory*. And even then, and perhaps more importantly, to this day, neither the Supreme Court of the United States nor this Court has answered whether "the constitutional mandate to disclose *exculpatory* evidence to defendants under *Brady v. Maryland* extends to the plea-bargaining stage of a prosecution[.]" *Ex parte Palmberg*, 491 S.W.3d 804, 814–15 & n.18 (Tex. Crim. App. 2016) (emphasis added). That remains an open question. *Id.*

Before deciding whether the State violated its disclosure obligations under *Brady* when it failed to disclose Goines's history of misconduct prior to Applicant's plea, the Court should at least file and set this case to decide whether *Brady* even required her to be notified. To reach the conclusion that the State violated its disclosure obligations under *Brady*, the Court would have to decide (1) that *Brady* requires the State to disclose *exculpatory* evidence prior to a negotiated plea, and (2) that Goines's record of misconduct in other cases constituted *exculpatory* evidence in this case.[5]

But the Court declines to undertake that inquiry. Instead, the Court merely observes that "[t]he habeas court recommends granting

---

[5] Interestingly, this Court has previously determined that a claim that the State violated its obligation, under *Brady*, to disclose to the defense helpful information about which it is aware is cognizable on an application for the writ of habeas corpus. *See Ex parte Kimes*, 872 S.W.2d 700 (Tex. Crim. App. 1993). So, if the Court were to determine that a *Brady* violation has been established in this case, Applicant would be entitled to relief on that ground alone, without regard to any additional argument that her plea was involuntary on account of that violation. It would essentially render her involuntary plea claim superfluous.

relief on false evidence and involuntary plea grounds. We agree." Majority Opinion at 2. It then grants relief, citing only *Ex parte Chabot*, 300 S.W.3d 768, 772 (Tex. Crim. App. 2009), presumably for the proposition that the Court "generally defers to and accepts the convicting court's findings of fact and conclusion of law when they are supported by the record." *See id.*

The convicting court itself, however, made no findings with respect to Applicant's *Brady* argument. It simply concluded that "Applicant successfully demonstrates by a preponderance of the evidence that her plea was involuntary" with a "*Cf.*" cite to *Barnaby*, 475 S.W.3d at 325–26. What does the Court mean by endorsing the convicting court's ambiguous findings? Does the Court mean to reject Applicant's *Brady* argument but agree that her plea was involuntary nonetheless—perhaps because materially false evidence was relied upon to secure her plea? If so, then the Court should explicitly say so and explain why it grants relief on two distinct grounds but on the same legal theory (*i.e.*, false evidence). If, instead, the Court intends to agree with Applicant's *Brady* argument and find that her plea was involuntary for that reason, then it should do so explicitly and not only tacitly in an unpublished opinion. Whatever the case may be, the Court should explain its reasoning more clearly than it does.

### III. CONCLUSION

Applicant pleads that she is entitled to postconviction habeas relief on two distinct grounds: false evidence and involuntary plea. I would not grant Applicant relief on her false evidence claim without first remanding to the convicting court, consistent with our precedents, with

instructions to develop the record concerning the materiality of any false evidence that may have led to her decision to plead guilty. If the record should then still demonstrate that no evidence corroborates Goines's version of events, then I would likely agree that Applicant is entitled to relief, at least on her first ground. I would also not grant relief at this point on Applicant's second ground—involuntary plea. Before reaching the merits of that claim I believe the Court should first file and set this writ to determine whether the prosecution's duty to disclose exculpatory evidence under *Brady* extends to the guilty-plea context and whether the State's recent disclosures about Goines can be proper characterized as *exculpatory*, as opposed to *impeachment* evidence.

I cannot agree that Applicant has yet shown that she is entitled to relief under either claim. *See Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985) ("In a postconviction collateral attack, the burden is on the applicant to allege and prove facts which, if true, entitle [her] to relief."). But the Court grants Applicant relief on both grounds alleged by Applicant anyway—on an inadequate record and without an adequate explanation of its reasoning.

I must respectfully dissent.


**FILED:**                                    June 19, 2024
**PUBLISH**