

# In the Court of Criminal Appeals of Texas

Nos. WR-95,686-01, WR-95,686-02

### EX PARTE DORIS ANN MARTIN,

*Applicant*

On Applications for Writs of Habeas Corpus
In Cause Nos. 1304900-A and 1304899-A
In the 177th District Court
Harris County

YEARY, J., filed a concurring and dissenting opinion in which KELLER, P.J., and KEEL and SLAUGHTER, JJ., joined.

Applicant has filed two separate writ applications. Each application alleges that her due process rights were violated: (1) because the evidence used to obtain her convictions was presumptively false; and (2) because the State failed to disclose Houston Police Officer Gerald

Goines's previous misconduct to her prior to her pleas of guilty, rendering those pleas involuntary. Today, the Court grants Applicant relief from both her delivery of hydrocodone conviction in cause number WR-95,686-02; and her possession of cocaine conviction in cause number WR-95,686-01. Majority Opinion at 2. As to both convictions, the Court reasons that Applicant was denied due process by the use of false evidence against her and that her guilty pleas were involuntary, citing only *Ex parte Mathews*, 638 S.W.3d 685 (Tex. Crim. App. 2022) and *Ex parte Coty*, 418 S.W.3d 597 (Tex. Crim. App. 2014), as authority. Majority Opinion at 1.

I concur with the Court's decision to grant Applicant relief from her delivery of hydrocodone conviction, in cause number WR-95,686-02. As to her conviction of possession of cocaine, in cause number WR-95,686-01, I believe relief is premature and that the Court should file and set the writ application to determine whether *Coty* and *Mathews,* properly construed, even apply to that case. Because the Court, instead, grants relief, I respectfully dissent.

## I. BACKGROUND

According to Officer Gerald Goines, who was then a narcotics officer with the Houston Police Department, on May 2, 2011, Applicant allegedly sold him hydrocodone. According to his offense report, Goines was in an unmarked vehicle during their interaction. After the deal was allegedly made, Goines drove off and radioed Applicant's location and description to another officer, Officer Amador. As Amador approached

Applicant, he witnessed her place an unknown object into her mouth.[1] Amador then called for a female officer, Officer Garcia, to search Applicant. During Garcia's search, Applicant was discovered to have cocaine in her possession.

On May 4, 2011, two days after her arrest, Applicant pled guilty to delivery of hydrocodone and possession of less than a gram of cocaine,[2] both state jail felonies. She was convicted of both felonies and was sentenced to 180 days' confinement, to be served concurrently in the Harris County Jail. *See* TEX. PENAL CODE § 12.44(a) (permitting state jail felonies to be punished as Class A misdemeanors in the interest of justice).[3]

Nearly eight years after Applicant's plea, on March 8, 2019, the Harris County District Attorney sent a letter to Applicant disclosing that Goines had been relieved from duty and was under criminal investigation. Furthermore, on February 20, 2020, the Harris County District Attorney's office sent a request to the trial court to appoint

---

[1] In addition to cocaine, Goines's incident report states that law enforcement recovered "6 GRAMS OF MARIJUANA FOUND IN THE MOUTH OF SUSPECT MARTIN UPON UNIFORMED OFFICER'S ARRIVAL."

[2] *See* TEX. HEALTH & SAFETY CODE §§ 481.104 (designating hydrocodone in certain circumstances as a Penalty Group 3 controlled substance), 481.114(b) (establishing delivery of less than 28 grams of a Penalty Group 3 or 4 controlled substance as a state jail felony); TEX. HEALTH & SAFETY CODE §§ 481.102 (designating heroin as a Penalty Group 1 controlled substance), 481.115(b) (establishing possession of less than one gram of a Penalty Group 1 controlled substance as a state jail felony).

[3] Applicant has completed her sentence, but she has alleged collateral consequences "sufficient to establish 'confinement' so as to trigger application of art. 11.07." *Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010).

habeas counsel to Applicant due to Goines's involvement in her case. According to Applicant's unsworn declaration, she did not receive this letter and was unaware of Goines's record of misconduct until she spoke to an investigator with the Harris County Public Defender's Office on November 21, 2023. With the assistance of counsel, Applicant filed the instant applications for writs of habeas corpus in March of 2024.

Applicant pleads the same two grounds for relief in both of her applications. First, she alleges that the State violated her due process rights by using materially false evidence to induce her pleas of guilty. Specifically, under the test established by this Court in *Ex parte Coty*, Applicant argues that Goines's claims against her must be presumed false and that the State cannot rebut this presumption of falsity. 432 S.W.3d 341 (Tex. Crim. App. 2014); *Ex parte Mathews*, 638 S.W.3d 316 (Tex. Crim. App. 2015). But for the use of this evidence against her, she argues, she would not have pled guilty. *Ex parte Barnaby*, 475 S.W.3d 316 (Tex. Crim. App. 2015). Second, Applicant alleges that her guilty pleas were involuntary. In particular, she argues that Goines was a member of the prosecution team whose record of misconduct the State had a duty to disclose to her prior to her pleas, under *Brady v. Maryland*, 373 U.S. 83 (1963)—whether the individual prosecutor was actually aware of that misconduct or not. Consequently, she argues, she lacked sufficient awareness of the relevant circumstances surrounding the entry of her plea to make it knowing and voluntary.[4]

---

[4] *See Ex parte Palmberg*, 491 S.W.3d 804, 807 (Tex. Crim. App. 2016) (quoting *State v. Guerrero*, 400 S.W.3d 576, 588 (Tex. Crim. App. 2013)):

## II. DELIVERY OF HYDROCODONE

I concur with the Court in granting Applicant relief from her conviction for delivery of hydrocodone, in cause number WR-95,686-02, because she has satisfied the factors set forth in *Coty* and extended in *Mathews*.

In *Mathews*, the Court extended the *Coty* presumption to "cases involving police officers who display a pattern of mendacity in obtaining drug arrests and convictions[.]" 638 S.W.3d at 690. Thus, when an applicant demonstrates that (1) a police officer who (2) "has committed multiple instances of intentional misconduct in another case or cases" (3) is the same state actor as in the current case, (4) has previously committed "the type of misconduct that would have affected the evidence in the applicant's case[,]" and (5) acted in the applicant's case "within roughly the same period of time as the other misconduct[,]" the Court will infer that evidence derived from that officer is false. *Id.* at 690–91. And if the State fails to rebut that inference, the Court will then go on to inquire whether the use of the presumptively false evidence was material. *Id.* at 689; *Coty*, 418 S.W.3d at 605.

The applicant, of course, continues to shoulder the additional and exclusive burden of showing the materiality of the false evidence. *Mathews*, 638 S.W.3d at 691. In *Barnaby* the Court decided that when

A defendant "must have sufficient awareness of the relevant circumstances," and must possess an understanding of the law in relation to the facts. . . . To determine whether a defendant's "awareness" was "sufficient" at the time of h[er] plea, a reviewing court looks to whether the plea was a voluntary and intelligent choice among the alternative courses of action open to the defendant.

an applicant claims she has entered an involuntary plea based on the use of false evidence, the question devolves into "whether there is a reasonable likelihood that [the false evidence] affected the defendant's decision to plead guilty[.]" 475 S.W.3d 316, 325. Similarly, here, the question also devolves into: "Would the defendant, knowing of the falsity of the evidence, still have plead guilty or would [s]he have insisted on going to trial? If [s]he would have chosen trial, the false evidence was material." *Id.* at 325–26.

Applying the *Mathews* factors, in my view, Applicant meets her burden, at least as it pertains to her conviction for delivery of hydrocodone: (1) when Applicant was arrested, Goines was a state actor; (2) Goines had engaged in multiple instances of intentional misconduct: (a) it has been determined that he presented false information in two cases from 2008, where this Court granted relief,[5] and (b) it has been determined that he also used false information in support of a search warrant in 2016 and provided false testimony in 2018 which led to this Court granting relief;[6] (3) Goines was the sole state actor whose evidence was relied upon to obtain the conviction; (4) the intentional misconduct committed by Goines in the other cases is the same type of misconduct that would have affected Applicant's case; and (5) Goines's involvement in Applicant's case (2011) took place within the same time frame (2008-2019) as Goines's other instances of misconduct. Furthermore, I am persuaded that the evidence showing that she delivered hydrocodone to Goines—being limited to Goines's own claims as reflected in his report—

---

[5] *See* WR-90,980-01, -02 (Otis Mallet); WR-90,986-01 (Steven Mallet)

[6] *See* WR-92,544-01 (Fredrick Jeffery)

was material to her decision to forgo a jury trial. For that reason, I concur with the Court's decision to grant relief in cause number WR-95,686-02.

### III. POSSESSION OF COCAINE

### A. *Coty* and *Mathews*

I am hesitant, at least without further inquiry, however, to say the same for Applicant's conviction for possession of cocaine, and the Court should be too. The facts in cause number WR-95,686-01 are distinguishable from the other cases in which the Court has applied *Coty* and *Mathews*. I emphatically believe that the proverbial brakes should be pumped in deciding whether to apply *Coty* and *Mathews* to cases where a conviction can be corroborated by evidence obtained apart from any presumed falsity arising from Goines's involvement in the case.

The evidence that was acquired by officers Amador and Garcia, which led to Applicant's plea of guilty to the charge of possession of cocaine, does not meet the criteria set forth by this Court in *Mathews*. Goines was not the sole state actor involved. Amador and Garcia were also present and could at least presumably attest to Applicant's possession of cocaine. In fact, Goines appears not to have been involved at all in the actual discovery of cocaine on Applicant's person. And nothing in the record suggests that either of these two officers have records of falsifying evidence or other misconduct. Presuming the evidence of Applicant's possession of cocaine was false, therefore, seems to be a significant expansion of *Coty* and *Mathews*—and lacks any good explanation.

That is, in *Coty*, *Mathews*, and *Barnaby*, the applicants alleged

only that the evidence of their *guilt* was false. *See Coty*, 418 S.W.3d at 602; *Mathews*, 638 S.W.3d at 687–88; *Barnaby*, 475 S.W.3d at 320–21. But here Applicant raises a different type of claim. She alleges that, but for Goines providing false information of a sale of hydrocodone to Amador, who called in Garcia to search Applicant, Applicant would not have been searched and the cocaine would never have been found. In other words, Applicant is not claiming that the use of false evidence of her guilt induced her to plead guilty to possession of cocaine, but that the presumptively false report made by Goines to Amador led to her search and ultimately, then, to her arrest.

During the search of Applicant conducted by Garcia, Applicant was found to possess cocaine and her apparent guilt for that offense is probably what induced her to forgo a jury trial. Before granting Applicant relief, the Court should consider whether the *Coty* and *Mathews* inference of falsity and the *Barnaby* standard of materiality ought to apply in circumstances such as these—and if so, how. I would file and set Applicant's case to consider that question.

Instead, the Court, without any explanation, leaps to the apparent conclusion that whenever Goines is involved in an arrest, whatever the circumstance, relief from an applicant's conviction should be granted. The Court justifies its decision only by citation to *Coty* and *Mathews* without any analysis of the applicable facts. In other words, the Court seems to ignore the possibility that the taint of Goines's presumed misconduct with respect to Applicant's hydrocodone charge could have been attenuated by the intervening circumstance of Garcia's and Amador's involvement with respect to Applicant's cocaine charge.

*Cf. Massey v. State*, 667 S.W.3d 784 (Tex. Crim. App. 2023).[7]

## B. Involuntary Plea

Applicant's involuntary plea claim, as it pertains to her conviction for possession of cocaine, is based on her argument that the disclosures required by *Brady v. Maryland* apply to guilty plea cases—a legal question that neither this Court nor the Supreme Court of the United States has yet squarely decided.

In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution." 373 U.S. at 87. The Supreme Court has since held that the duty to disclose impeachment and exculpatory evidence applies even without a request by the accused. *Strickler v. Greene*, 527 U.S. 263, 280 (1999). And "the individual prosecutor has a duty to learn of any favorable evidence known only to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

Nevertheless, in *United States v. Ruiz*, the United States Supreme Court concluded, with respect to guilty plea proceedings, that "the Constitution does *not* require the Government to disclose material *impeachment* evidence prior to entering a plea agreement with a criminal defendant." 536 U.S. 622, 633 (2002) (emphasis added). In this

---

[7] The question that was decided in *Massey* was "whether the Appellant's commission of the new offenses constitutes an intervening circumstance under *Brown*, so as to attenuate the taint of police misconduct with regard to evidence of still another, different offense—possession of a controlled substance—discovered subsequent to the alleged police misconduct." 667 S.W.3d at 789.

case, the question arises whether the information about Goines's past misconduct, which was only more recently disclosed to Applicant by the State, is mere *impeachment* evidence that was not required to be disclosed, or whether it might indeed be more properly characterized as *exculpatory*. And even then, and perhaps more importantly, to this day, neither the Supreme Court nor this Court has answered whether "the constitutional mandate to disclose *exculpatory* evidence to defendants under *Brady v. Maryland* extends to the plea-bargaining stage of a prosecution[.]" *Ex parte Palmberg*, 491 S.W.3d 804, 814–15 & n.18 (Tex. Crim. App. 2016) (emphasis added). That remains an open question. *Id.*

Consequently, before deciding whether the State violated its disclosure obligations under *Brady* when it failed to inform Applicant of Goines's history of misconduct prior to her plea, the Court should at least file and set WR-95,686-01 to decide whether *Brady* even required her to be notified. To reach the conclusion that the State violated its disclosure obligations, the Court would have to decide (1) that *Brady* requires the State to disclose exculpatory evidence prior to a negotiated plea, and (2) that Goines's record of misconduct in other cases constituted exculpatory evidence, in cause number WR-95,686-01.

But the Court declines to undertake that inquiry. Instead, it merely states that "[t]he State and the trial court both recommend granting relief" on Applicant's claim of involuntary plea under *Coty* and *Mathews*, and that it agrees. If the Court means to endorse Applicant's *Brady* argument by its opinion today, then it should say so explicitly. If not, then it is incumbent on the Court to explain by what rationale it concludes, despite rejecting her *Brady* argument, that Applicant's plea

was involuntary. Because the Court does neither, I cannot join its opinion.

### III. CONCLUSION

For the reasons explained here, I respectfully concur as to the Court granting relief from Applicant's delivery of hydrocodone conviction (WR-95,686-02) and dissent to the Court's grant of relief from the possession of cocaine conviction (WR-686-01). While she may ultimately be entitled to such relief in the latter case, I hesitate to join the Court until the issue of extending *Coty* and *Mathews* is resolved and until the Court explicitly establishes whether *Brady* applies to guilty pleas.

**FILED:**                                                    August 21, 2024
**PUBLISH**