

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-87,190-02

### EX PARTE ANDREW SAUCEDO, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 1415436-A IN THE 262ND DISTRICT COURT
### FROM HARRIS COUNTY

KEASLER, J., filed a concurring opinion, in which HERVEY and YEARY, JJ., joined.

### CONCURRING OPINION

Saucedo pleaded guilty to possession of methamphetamine, but post-plea laboratory testing has shown that the substance he possessed was actually methylethcathinone. Saucedo argues that, in light of this new evidence, his guilty plea was involuntary. Under the Court's holdings in *Ex parte Palmberg* and *Ex parte Broussard*, I cannot agree that Saucedo's plea was involuntary. However, I do think that his conviction violates due process on other grounds. I write separately to explain my rationale.

### I. FACTS

Saucedo was initially charged with two felony offenses: first-degree felony possession of a controlled substance, over 400 grams of diluted codeine; and second-degree felony possession of a controlled substance, between 4 and 200 grams of methamphetamine. At his first court appearance on January 27, 2014, Saucedo pleaded guilty to these charges and, pursuant to the terms of a plea-bargain agreement, was placed on a six-year term of deferred-adjudication probation. At the time he entered his plea, no confirmatory laboratory testing had been done on any of the substances Saucedo possessed.

On March 21, 2014, what was then called the Houston Police Department (HPD) Crime Laboratory prepared a report identifying some, but not all, of the substances from Saucedo's cases. The HPD Crime Laboratory reported that the substance supporting Saucedo's second-degree felony charge, initially thought to be methamphetamine, was in fact "methylethcathinone," a "derivative of 2-aminopropanal." There were 9.18 grams of this substance in the sample analyzed. Methamphetamine is a penalty group one substance, and possession of 4–200 grams of a penalty group one substance is a second-degree felony.[1] Methylethcathinone is a penalty group two substance, and possession of 4–400 grams of a penalty group two substance is also a second-degree felony.[2]

On January 26, 2017, Saucedo's probations were revoked, and he was sentenced to ten years' imprisonment on each charge. These sentences were ordered to run concurrently.

---

[1] *See* TEX. HEALTH & SAFETY CODE §§ 481.102(6), 481.115(d).

[2] *See id.* §§ 481.103(4), 481.116(d).

The habeas judge made a finding that, both at the time of Saucedo's plea and at the time his probation was revoked, Saucedo was unaware of the lab report indicating that the substance he possessed was actually methylethcathinone.

On June 14, 2017, the Houston Forensic Science Center (HFSC) prepared another report pertaining to Saucedo's cases. In this report, the HFSC reported that the substance supporting Saucedo's first-degree felony charge, initially thought to be codeine, was in fact promethazine. Promethazine is not within any of the penalty groups in the Controlled Substances Act; it is, at most, a dangerous drug.[3] Possession of any amount of a dangerous drug is a Class A misdemeanor offense.[4]

Shortly thereafter, Saucedo contemporaneously filed two applications for writs of habeas corpus in the convicting court. In his first, -01 writ, Saucedo argued that (1) his guilty plea as to possession of codeine was involuntary under *Ex parte Mable*,[5] and (2) his conviction violated due process because, "[i]f Applicant committed an offense, it is not the specific offense Applicant was accused of and convicted of violating." We granted relief in the -01 writ, expressly citing *Mable*.[6] Whether to grant relief from Saucedo's conviction for possession of methamphetamine is the issue before us in this -02 writ.

---

[3] *See* TEX. HEALTH & SAFETY CODE § 483.001(2).

[4] *See id.* § 483.041(d).

[5] *Ex parte Mable*, 443 S.W.3d 129 (Tex. Crim. App. 2014).

[6] *See Ex parte Saucedo*, No. WR-87,190-01, 2017 WL 4021160, at *1 (Tex. Crim. App. Sept. 13, 2017) (*per curiam*, not designated for publication).

## II. LAW

### A. Due Process, Involuntary Pleas, and *Ex parte Mable*.

If a guilty plea is not "voluntary and knowing, it has been obtained in violation of due process and is therefore void."[7] For the plea to be voluntary and knowing, the accused must have a "sufficient awareness of the relevant circumstances and likely consequences" of his plea.[8] To meet this standard, "the defendant must have an actual awareness of the nature and gravity of the charges against him and of the constitutional rights and privileges that he necessarily relinquishes—in short, 'a full understanding of what the plea connotes and of its consequences.'"[9]

Applying these principles in controlled-substance cases in which the defendant pleads guilty before the identity of the substance has been confirmed by laboratory testing has been a unique, recurring challenge for this Court—one that we first confronted head-on in *Ex parte Mable*.[10] Mable pleaded guilty to possession of a controlled substance, but a post-plea laboratory analysis indicated that the substance he possessed "did not actually contain any illicit materials."[11] In light of this newly acquired evidence, Mable claimed that he was

---

[7] *E.g.*, *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

[8] *Brady v. United States*, 397 U.S. 742, 748 (1970).

[9] *Davison v. State*, 405 S.W.3d 682, 686–87 (Tex. Crim. App. 2013) (quoting *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)).

[10] 443 S.W.3d 129 (Tex. Crim. App. 2014).

[11] *Id.* at 130.

"actually innocent,"[12] but we disagreed. We noted that, under *State v. Wilson*, the phrase "actual innocence" applies "only in circumstances where the accused did not actually commit the charged offense *or* any possible lesser included offenses."[13] We concluded that it was possible, even in light of the post-plea laboratory report, that Mable had "attempted to possess a controlled substance," and had thereby committed "a lesser included offense[] of possession."[14]

Nevertheless convinced that Mable was entitled to relief, we opted instead to invalidate his plea as insufficiently knowing and voluntary.[15] We noted that "all parties involved, including the applicant, incorrectly believed the applicant had been in possession of drugs"—a fact that we described as "crucial."[16] "[W]hile operating under such a misunderstanding," we said, "the applicant cannot be said to have entered his plea knowingly and intelligently."[17]

## B. *Mable*'s progeny.

*Mable* quickly invited a spate of litigation. What other sorts of adjudicative facts,

---

[12] *See Ex parte Elizondo*, 947 S.W.2d 202, 205 (Tex. Crim. App. 1996).

[13] *Mable*, 443 S.W.3d at 130 (emphasis in original) (citing *State v. Wilson*, 324 S.W.3d 595, 598 (Tex. Crim. App. 2010)).

[14] *Id.* at 130–31.

[15] *Id.* at 131.

[16] *Id.*

[17] *Id.*

known-to-be-unknown at the time of the plea, might later be deemed "crucial" to the guilty-plea process, such that miscalculating them would render the plea invalid?

In *Ex parte Palmberg*, just as in *Mable*, the defendant pleaded guilty to possessing a controlled substance before the laboratory had completed an analysis of the substance he possessed.[18] The lab eventually informed the parties, post-plea, that "there was no unprocessed sample left over for the laboratory to analyze," the arresting officer having used up all of the substance found on Palmberg for field testing.[19] While Palmberg sought relief under *Mable*, we considered his situation to be "factually distinguishable" from Mable's.[20] While Mable pleaded guilty under a misapprehension that was ultimately "crucial" to his case, Palmberg had merely "overestimated the State's ability to . . . prove he was guilty in the absence of his judicial confession."[21] We rejected the idea that *Mable* requires the defendant to "kn[o]w every fact relevant to the prosecution of his case" before he may enter a voluntary plea.[22]

In *Ex parte Broussard*, the defendant pleaded guilty to delivery of cocaine, but laboratory tests later determined that the substance he delivered was actually

---

[18] *Ex parte Palmberg*, 491 S.W.3d 804, 805–06 (Tex. Crim. App. 2016).

[19] *Id*. at 806.

[20] *Id*. at 811.

[21] *Id*. (emphasis omitted).

[22] *Id*. at 809.

methamphetamine.[23] Broussard claimed that his plea was involuntary under *Mable*, but we again disagreed. We reiterated that "[e]very defendant that pleads guilty does so with the implicit understanding that conviction at trial is never certain."[24] So, we reasoned, a defendant should not ordinarily be allowed to withdraw his plea "simply because his good-faith evaluations of the facts turned out to be incorrect."[25] Because Broussard failed to articulate any "reason why he would not have accepted the plea bargain other than the bare fact that the illicit substances were different," we denied relief.[26]

## III. ANALYSIS

### A. *Mable* should be overruled.

We ordinarily follow the doctrine of *stare decisis* in order to "promote judicial efficiency and consistency, encourage reliance upon judicial decisions, and contribute to the integrity of the judicial process."[27] But these laudable interests are not advanced when we continue to follow a precedent that was either poorly reasoned from the outset or that has, in the ensuing years, proven itself "unworkable."[28] In those situations, it is appropriate for

---

[23] *Ex parte Broussard*, 517 S.W.3d 814, 816 (Tex. Crim. App. 2017).

[24] *Id.* at 818 (quoting *Palmberg*, 491 S.W.3d at 809 n.9).

[25] *Id.* at 819.

[26] *Id.* at 818.

[27] *E.g.*, *Febus v. State*, 542 S.W.3d 568 S.W.3d 568, 575 (Tex. Crim. App. 2018) (citations omitted).

[28] *Id.* at 576.

the Court to overrule its prior precedent and find a better way going forward.

### I. *Mable* was poorly reasoned.

In *Mable*, the Court's desire to resolve the case on involuntary-plea grounds was clearly based on the belief that it simply could not grant relief on Mable's claim of actual innocence.[29] This belief was, in turn, based upon language from our opinion in *State v. Wilson*, wherein we said that "the term 'actual innocence' shall apply . . . only in circumstances in which an accused did not, in fact, commit the charged offense or any lesser-included offenses."[30]

There were two problems with this approach. In the first place, Mable never claimed that his plea was involuntary. In his writ application, Mable grounded his claim for post-conviction habeas relief on a single legal theory: that he was "actually innocent" of possessing a controlled substance. The closest Mable came to arguing involuntariness was an observation that a claim of actual innocence "is much like a traditional involuntary plea" claim.[31] But that is a far cry from Mable claiming that his own plea was coerced or that he did not understand, when he pleaded guilty, the consequences of his plea or the rights that he was necessarily relinquishing. Although the Court's instinct to invalidate Mable's

---

[29] *See Mable*, 443 S.W.3d at 130.

[30] *Wilson*, 324 S.W.3d at 597–98.

[31] Applicant's Memorandum of Law Supporting Habeas Relief, *Ex parte Kendrick Mable*, No. 1421276-A (338th Dist. Ct., Harris County, Tex. May 1, 2014).

conviction as inconsistent with due process was correct, for reasons that I explain below,[32] involuntariness was clearly not the fundamental due-process defect that Mable asked us to cure. The Court should not have reached that issue *sua sponte*.

Secondly, and more importantly, *Mable*'s description of what *Wilson* held was woefully incomplete. In *Wilson*, the appellee pleaded guilty to felony DWI.[33] He later came to realize that, at the time he pleaded guilty, one of his prior DWI convictions was not eligible for use as a jurisdictional enhancement. In a post-conviction habeas application under Code of Criminal Procedure Article 11.072, Wilson complained that he was "actually innocent" of felony DWI, and both the trial court and court of appeals agreed.[34]

We disagreed that Wilson's situation could be characterized as "actual innocence," holding that that nomenclature should apply "only in circumstances in which an accused did not, in fact, commit the charged offense or any of the lesser-included offenses."[35] That was the only passage that *Mable* quoted from *Wilson*, but *Wilson* said much more:

> In cases such as this one, in which the issue is the offense of which [the applicant] is, in fact, guilty, thus implicating the legality of his sentence, the appropriate terms are "guilty only of" a lesser-included offense and "ineligible for" the sentence assessed. For the purpose of this case, and other pending cases in which the issue is the offense of which the accused is, in fact, guilty, the sentence assessed, or both, we will interpret a claim of "actual innocence"

---

[32] *See infra* Part III-B.

[33] *State v. Wilson*, 324 S.W.3d 595, 596 (Tex. Crim. App. 2010).

[34] *Id.* at 597.

[35] *Id.* at 598.

to mean "guilty only of" a lesser-included offense or "ineligible for" the sentence assessed, or both.[36]

Notably, we went on to affirm the lower courts' decisions granting Wilson habeas relief, despite the fact that Wilson was claiming actual innocence in a situation where, by virtue of his guilty plea, he was still guilty of a lesser-included offense—misdemeanor DWI. And the remedy we afforded was not simply reforming the judgment to reflect a misdemeanor conviction and ordering Wilson re-sentenced. We affirmed the lower courts' decisions vacating Wilson's felony conviction altogether, at which point he was presumably subject to re-prosecution for the misdemeanor offense.

*Mable* did not explain any of this. Consistent with *Wilson*, we should not have simply rejected Mable's claim of actual innocence and then proceeded to address a due-process defect that Mable never complained about. Instead, we should have construed Mable's claim of actual innocence as a claim that he was "guilty only of" a lesser-included offense or that he was factually "ineligible for" the punishment he received. Under either of these theories, Mable's claim was self-evidently meritorious. Furthermore, the remedy we would have afforded Mable under this approach would have been exactly the same as the remedy we afforded him anyway: His plea would have been withdrawn, and he would have been returned to the district court to answer the charges as set out in the indictment.[37]

---

[36] *Id.*

[37] *Id.* at 600. *But see Ex parte Stroud*, No. AP-78,638, 2008 WL 383630, at *1 (Tex. Crim. App. Feb. 13, 2008) (not designated for publication) (in a pre-*Wilson* case, granting relief under *Elizondo* as to the offense of aggravated sexual assault and reforming the

*Mable* is also out-of-step with the United States Supreme Court's description of voluntariness in the plea-bargain context. In *United States v. Ruiz*, the Supreme Court was asked to decide "whether the Constitution requires . . . disclosure of impeachment information" before a plea agreement may be entered into.[38] In concluding that it does not, the Court noted that "the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it."[39] Thus, a defendant may validly "waive his right to remain silent, his right to a jury trial, or his right to counsel even if the defendant does not know the specific questions the authorities intend to ask, who will likely serve on the jury, or the particular lawyer the State might otherwise provide."[40]

In like fashion, so long as a criminal defendant "fully understands the nature" of his right to plead not guilty, the fact that he was unaware that the State's evidence would ultimately fail to prove his guilt at trial means only that the "specific detailed consequences" of waiving that right eluded him.[41] As *Ruiz* illustrates, the Constitution does not consider this

---

judgment "to reflect guilt of the offense of sexual assault").

[38] *Ruiz*, 536 U.S. at 629.

[39] *Id.* (emphasis in original).

[40] *Id.* at 629–30 (citing *Colorado v. Spring*, 479 U.S. 564, 573–75 (1987)).

[41] *Id.* (emphasis omitted).

ignorance of particulars to be so odious as to invalidate the "grave and solemn act" of a guilty plea.[42]  On the contrary, "the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge . . . but permits a court to accept a guilty plea . . . despite various forms of misapprehension under which a defendant might labor."[43]

Even to the extent that *Ruiz* draws a distinction between mere "impeachment information" and exculpatory evidence,[44] we are not dealing with a situation where state actors knowingly suppressed exculpatory evidence.  In each of these cases—*Mable*, *Palmberg*, *Broussard*, and this one—the State,  defense counsel, and trial court all believed that the evidence would ultimately show that the defendant was guilty of the charged offense. There was, then, no fault to be found in the actions of any of those institutional entities.  If there had been, I would be much more open to the idea that the defendant's plea was involuntary.[45]  Instead, we are dealing with a plea proceeding that could rightly be described as "error-free"[46]—yet another reason why claims of this nature are better analyzed under an

---

[42]  *See Brady*, 397 U.S. at 747.

[43]  *Ruiz*, 536 U.S. at 630 (citations omitted).

[44]  *See id.* at 629 ("[I]mpeachment information is special in relation to the fairness of a trial, not in respect to whether a plea is voluntary.") (emphasis omitted).

[45]  *See Broussard*, 517 S.W.3d at 817 ("[A] guilty plea induced by the State's misrepresentation or improper promises . . . is involuntary and may be withdrawn.") (citations omitted).

[46]  *Cf. Elizondo*, 947 S.W.2d at 209 ("Where the trial has been constitutionally error-free, a conviction is entitled to the greatest respect.").

actual-innocence framework rather than a voluntary-plea framework. After all, an "error-free" proceeding is the precise situation that a bare claim of innocence was designed to account for.[47]

By way of explaining the claim that there are "various forms of misapprehension" under which a defendant might permissibly labor, *Ruiz* noted the case of *McMann v. Richardson*.[48] In *McMann*, the defendant had pleaded guilty under the law then existing and, some time after the plea, the law changed so as to make his plea bargain less advantageous than he initially planned.[49] McMann claimed that this change in the law rendered his plea involuntary, but the Supreme Court concluded that these kinds of subsequent legal developments do not vitiate the voluntary nature of an otherwise lawful guilty plea.[50] Why? Because "when the defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk . . . in either his or his attorney's assessment of the law and facts."[51] We ourselves recently, unanimously, and rightly

---

[47] *Id.*

[48] *See Ruiz*, 536 U.S. at 630 (citing, *inter alia*, *McMann v. Richardson*, 397 U.S. 759, 770 (1970)).

[49] *See McMann*, 397 U.S. at 773–74.

[50] *Id.*

[51] *Id.* at 774.

reaffirmed this constitutional analysis.[52]

*Mable*, then, would seem to allow for an illogical double-standard within our plea jurisprudence: Subsequent legal developments cannot retroactively render a defendant's guilty plea involuntary, but subsequent factual developments can. In other words, whether a guilty plea was voluntarily entered depends on (1) the law in existence at the time of the plea, and (2) the facts in existence at the time the defendant seeks to rescind his plea. I can think of no good reason why this should be.

Perhaps the Court's decision to retain this dual standard would be understandable if the Supreme Court had yet to say whether subsequent factual developments can retroactively render an otherwise-voluntary guilty plea involuntary. The problem is that the Supreme Court has weighed in on this issue—and found, contrary to *Mable*, that they cannot. In *Puckett v. United States*, the Supreme Court was asked to decide whether, "[w]hen the government breaks a promise that was made to a defendant in the course of securing a guilty plea, the knowing and voluntary character of that plea retroactively vanishes, because (as it turns out) the defendant was not aware of its true consequences."[53] Its response was telling:

> Although the analogy may not hold in all respects, plea bargains are essentially contracts. When the consideration for a contract fails—that is, when one of the exchanged promises is not kept—we do not say that the voluntary bilateral

---

[52]   *See Briggs v. State*, 560 S.W.3d 176, 190–91 (Tex. Crim. App. 2018) ("When Briggs waived her right to have a jury determine her guilt or innocence and did not contest her guilt, she did so under the law then existing.") (internal quotation marks, brackets, and citations omitted).

[53]   *Puckett v. United States*, 556 U.S. 129, 136 (2009).

consent to the contract never existed, such that it is automatically and utterly void; we say that the contract was broken. The party injured by the breach will generally be entitled to some remedy, which might include the right to rescind the contract entirely, but that is not the same thing as saying the contract was never validly concluded.[54]

All of the reasons *Puckett* gives for concluding that plea-bargain breaches do not retroactively render a defendant's plea involuntary apply with equal force to other kinds of subsequent factual developments. Under general contract principles, "[e]rror in predicting a future fact known to be uncertain is not the kind of mistake which will relieve a party from a contract."[55] To keep our jurisprudence in harmony with these common-law contract principles,[56] we must reject *Mable*'s assumption that certain facts are so "crucial" to the guilty-plea process that a defendant can only validly speculate about them if his speculations ultimately prove correct.

Consistent with *Puckett*, as we shall soon see, there may yet be a due-process remedy available to a person who can demonstrate with new evidence that his conviction is unsupportable, and that remedy may sometimes include rescinding the plea agreement.

---

[54] *Id.* at 137 (citations omitted).

[55] *City of Austin v. Cotton*, 509 S.W.2d 554, 557 (Tex. 1974); *see also Palmberg*, 491 S.W.3d at 810 ("The fact that [the defendant's] roll of the dice did not turn out as favorably as it might have had he proceeded to trial is not a ground for invalidating his plea.").

[56] *See, e.g., Ex parte Moussazadeh*, 64 S.W.3d 404, 411 (Tex. Crim. App. 2001) ("We apply general contract law principles to determine the content of a plea agreement in a criminal case.") (citations omitted), *overruled on other grounds by Ex parte Moussazadeh* (*Moussazadeh II*), 361 S.W.3d 684 (Tex. Crim. App. 2012).

"[B]ut that is not the same thing as saying the contract was never validly concluded."[57] To the extent that the Court continues to insist otherwise—that, not only are pleas such as these unsupportable in their current state, they were never lawfully entered in the first place—it renders our plea jurisprudence both internally inconsistent and at odds with binding Supreme Court precedent.

### ii. *Mable* has become unworkable.

For a number of reasons, *Mable* has also become unworkable. First, the Court's voluntary-plea jurisprudence following *Mable* has begun to undermine *Mable*'s central thesis. *Palmberg* held that, even if a defendant is ignorant of certain facts, he may still enter a knowing and voluntary plea, despite that ignorance, so long as he is aware that those facts represent "an unknown variable in his prosecution."[58] In other words, his ignorance of facts he "knew . . . he did not know" should not invalidate his otherwise voluntary decision to plead guilty.[59] Likewise, *Broussard* held that a defendant cannot "withdraw his plea simply because his good-faith evaluations of the facts turned out to be incorrect."[60]

These holdings, applied to the facts of *Mable*, would have counseled against the conclusion that Mable's plea was somehow unknowing or involuntary. Like *Palmberg* and

---

[57] *Puckett*, 556 U.S. at 137.

[58] *Palmberg*, 491 S.W.3d at 810.

[59] *Id.*

[60] *Broussard*, 517 S.W.3d at 819.

*Broussard*, Mable was aware, at the time he pleaded guilty, that the identity of the substance he possessed had not yet been confirmed. He "knew . . . he did not know" whether the State would be able to prove its case at trial, and he made a conscious, uncoerced decision to plead guilty despite his ignorance in that regard.[61] Under the logic of *Palmberg* and *Broussard* (to say nothing of *Brady*, *McCann*, *Ruiz*, *Puckett*, *etc.*), Mable's plea was both voluntary and adequately informed.

I suppose the argument could be made that, to the extent that *Palmberg* and *Broussard* conflict with *Mable*, *Mable* ought to control, and those opinions ought to be abandoned—if for no other reason than that *Mable* came first. The problem with this argument is that, as I have already suggested, *Palmberg* and *Broussard* are more consistent with Supreme Court precedent than *Mable* is. This should come as no surprise. *Palmberg* went to great lengths to explain its holding in reference to the Supreme Court's plea jurisprudence,[62] as did *Broussard*.[63] *Mable*, in contrast, contained very little in the way of careful legal analysis.

Second, because of its inherent malleability, *Mable* has produced, and will likely continue to produce, blatantly contradictory outcomes. For example, in *Ex parte Brooks*, we allowed an applicant to withdraw his guilty plea because "he was not made aware of

---

[61] *Palmberg*, 491 S.W.3d at 810.

[62] *See id.* at 807–08 (citing, *inter alia*, *Boykin*, 395 U.S. at 243; *McCarthy*, 394 U.S. at 466; *Ruiz*, 536 U.S. at 625–26; *Brady*, 397 U.S. at 757; *McMann*, 397 U.S. at 769).

[63] *See Broussard*, 517 S.W.3d at 816–18 (citing, *inter alia*, *McCarthy*, 394 U.S. at 466; *McMann*, 397 U.S. at 766; *Ruiz*, 536 U.S. at 625; *Brady*, 397 U.S. at 757; *Boykin*, 395 U.S. at 243).

credibility issues pertaining to certain State's witnesses."[64]  We expressly cited *Mable* in support of that decision.  This despite the fact that, in *Ruiz*, the Supreme Court had already rejected the idea that "the Constitution requires . . . disclosure of impeachment information" before a plea may be voluntarily entered into.[65]  Perhaps in recognition of this obvious deviation from binding Supreme Court precedent, six months later, in *Ex parte Sneed*, we denied relief on identical facts—and cited *Ruiz*.[66]  We did so over a dissenting opinion urging us to follow *Mable*.[67]  The fact that *Mable* can reasonably be cited in support of a holding that directly contradicts binding Supreme Court precedent ought to amply demonstrate its unworkability.

Because *Mable* was poorly reasoned and because it established what I consider to be an unworkable standard, I would take this opportunity to overrule it.[68]  I would hold that if a person pleads guilty knowing that a certain fact is as-yet unknown, then in the absence of any fraud, coercion, misconduct, or ineffective assistance of counsel, he may still render a

---

[64]  *See Ex parte Brooks*, No. WR-83,730-01, 2018 WL 345058, at *1 (Tex. Crim. App. Jan. 10, 2018) (not designated for publication).

[65]  *Ruiz*, 536 U.S. at 629.

[66]  *See Ex parte Sneed*, No. WR-83,520-01, 2018 WL 3134456, at *1 (Tex. Crim. App. June 27, 2018) (not designated for publication).

[67]  *Id.* at *2 (Alcala, J., dissenting).

[68]  *See, e.g.*, *Ex parte Johnson*, 541 S.W.3d 827, 830 (Tex. Crim. App. 2017) ("Although we do not overrule precedent lightly, we may do so when the prior decision was poorly reasoned or has become unworkable.") (internal quotation marks and citations omitted).

knowing and voluntary guilty plea—even if subsequent factual developments ultimately show that the plea was inaccurate or untrue. On this analysis, *Palmberg* and *Broussard* would both remain good law.

## B. *Wilson* remains good law.

I hasten to add that I also think *Wilson* is still good law. So if an applicant can demonstrate that he is "guilty only of" a lesser-included offense or that he is factually "ineligible for" a particular sentence, he might still be allowed to withdraw his plea of guilty.[69] But if an applicant obtained relief in this way, it would not be because, in light of the new evidence, his plea was somehow retroactively rendered unknowing or involuntary.[70] Neither would it be because the applicant demonstrated that he was "actually innocent," with all the additional trappings and baggage that accompany that nomenclature.[71] Rather, it would be because due process simply will not tolerate punishing as a felon a person who, by every objective measure of the law and facts, committed only a misdemeanor.[72] Neither will it tolerate punishing as a first-degree felon one who committed at most a second-degree felony; as a second-degree felon one who committed at most a third-degree felony; and so

---

[69] *See Wilson*, 324 S.W.3d at 598.

[70] *Cf. Puckett*, 556 U.S. at 137.

[71] *See Ex parte Reyes*, 474 S.W.3d 677, 681 (Tex. Crim. App. 2015) ("A declaration of actual innocence, because of its impact on a defendant's reputation, affords greater relief than merely granting a new trial[.]").

[72] *See Wilson*, 324 S.W.3d at 599; *Ex parte Sparks*, 206 S.W.3d 680, 683 (Tex. Crim. App. 2006).

forth. These are the basic premises behind a post-conviction claim of "illegal sentence."[73]

To be sure, even *Wilson* noted the interrelatedness of "guilty only of" claims and claims of actual innocence.[74] Naturally, then, a claim for post-conviction relief under *Wilson* should function much like a claim of actual innocence: The applicant must show, by clear and convincing evidence, that no reasonable juror would have convicted him of the greater offense, or made findings consistent with the heightened sentence, in light of the new evidence.[75] That being said, although a *Wilson* claim is functionally similar to a claim of actual innocence, I would not deem an applicant who met the *Wilson* criteria to be "actually innocent." I would prefer to call a person in that situation "actually not guilty" of the charged offense, rather than "actually innocent" of any offense.[76]

**C. Although Saucedo's plea was not involuntary, he is nevertheless entitled to relief under *Wilson*.**

In this case, Saucedo claims that, under *Mable*, his plea of guilty to the offense of possession of methamphetamine was involuntary because a subsequent lab report showed that the substance he possessed was actually methylethcathinone. Because I would overrule *Mable*, I need not decide whether the difference between possessing methamphetamine and

---

[73] *E.g., Ex parte Rich*, 194 S.W.3d 508, 512 (Tex. Crim. App. 2006).

[74] *See Wilson*, 324 S.W.3d at 599 (quoting *Sparks*, 206 S.W.3d at 680).

[75] *See Elizondo*, 947 S.W.2d at 209; *cf. also Stroud*, 2008 WL 383630, at *1.

[76] *Cf. Ex parte Fournier*, 473 S.W.3d 789, 792 (Tex. Crim. App. 2015) (reaffirming "*Elizondo*'s fact- and conduct-centric notions of actual innocence").

possessing methylethcathinone is a "crucial" fact, such that misapprehending it would retroactively render Saucedo's guilty plea involuntary.[77]  I need only observe that Saucedo pleaded guilty with the knowledge that the identity of the substance he possessed was as-yet unconfirmed.  So, following *Palmberg* and *Broussard*, Saucedo "cannot now invalidate his guilty plea because his prediction of the State's ability to prove he possessed [methamphetamine] was incorrect."[78]  There is no suggestion that Saucedo was fraudulently misled or coerced into pleading guilty or that his plea counsel was ineffective.  The record shows that Saucedo was duly advised of the consequences of a guilty plea and of the rights he was necessarily relinquishing by pleading guilty.  Under these circumstances, Saucedo's plea was knowing and voluntary.[79]  That claim should be denied.

In a separate ground for relief, Saucedo also claims that his "right to due process" was violated because, "[i]f Applicant committed an offense, it is not the specific offense Applicant was accused of and convicted of violating."  I would construe this claim in accordance with *Wilson*: Saucedo claims that, in light of new evidence, he was "guilty only of" possessing methylethcathinone, and that a judgment reflecting a conviction for possession of methamphetamine violates due process.

---

[77] *Contra Mable*, 443 S.W.3d at 131.

[78] *Broussard*, 517 S.W.3d at 819 (citing *Palmberg*, 491 S.W.3d at 810 n.13).

[79] *See, e.g.*, *McMann*, 397 U.S. at 774 ("[H]e is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and voluntary act.")

I agree with Saucedo that this conviction violates due process. No rational juror, weighing the lab report indicating "methylethcathinone" against the charge of possession of methamphetamine, would have found Saucedo guilty of the latter. In relation to the charged offense, the most the jury could have found is that, under Saucedo's mistaken understanding of the facts, he attempted to possess methamphetamine. That offense is one degree lower than the offense of which he was convicted.[80] In this regard, as presently charged, Saucedo is factually ineligible for second-degree felony punishment.

It is also in some sense true that, in light of this new evidence, Saucedo is still guilty of an offense that is co-equal to the one he was charged with and convicted of. Possession of 4–400 grams of a penalty group two controlled substance is, like possession of 4–200 grams of a penalty group one substance, a second-degree felony. Saucedo judicially confessed to possessing just over 9 grams of a controlled substance. In this sense, Saucedo is still theoretically eligible for second-degree felony punishment, because he is still in theory guilty of possession of a penalty group two controlled substance.

But no institutional trial-level fact finder, be it judge or jury, has yet passed upon Saucedo's guilt or innocence of the separate and distinct offense of possession of methylethcathinone. For us to take judicial notice, or else simply declare, that the facts demonstrate that Saucedo is guilty of that offense as a basis for denying him relief from his conviction for possession of methamphetamine would be to bypass, among many other

---

[80] *See* TEX. HEALTH & SAFETY CODE § 481.108; TEX. PENAL CODE § 15.01(d).

things, his Sixth-Amendment right to a jury trial. I would not have the Court go down that road.

So, while I acknowledge that Saucedo is theoretically eligible for second-degree felony punishment for the offense of possession of methylethcathinone, to turn that theoretical possibility into a reality, the State must charge Saucedo with that offense and prosecute him for it. I can think of no impediment to the State doing so in this case. But I would not allow Saucedo to remain convicted of an offense that he plainly did not commit simply because there is evidence to suggest that, independent of that offense, he also committed another.

## IV. CONCLUSION

I realize that the framework I have proposed today will, in the vast majority of cases going forward, lead to the same bottom-line results as *Mable*. But every judge should care, in every case, not only that the right result be reached, but that it be reached for the right reasons. Confronted with a knotty legal issue, a careful, reasoned untangling is what's expected of us—not simply that, for any reason or no reason at all, the knot be cut.

I would deny Saucedo's claim that his guilty plea was involuntary. Instead, I would hold that Saucedo is entitled to relief because he has established, by clear and convincing evidence, that no rational juror would have found him guilty of possession of methamphetamine in light of this newly available lab report. Finally, although I would allow Saucedo to withdraw his plea as inconsistent with due process, I would not declare him

actually innocent.

With these thoughts, I concur in the Court's judgment.

Filed: June 26, 2019

Publish