

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-89,601-01

## EX PARTE CHARLES EDWARD THOMPSON, Applicant

## ON APPLICATIONS FOR A WRIT OF HABEAS CORPUS CAUSE NO. 1380303-A IN THE 179TH DISTRICT COURT FROM HARRIS COUNTY

YEARY, J., filed a dissenting opinion.

## DISSENTING OPINION

By the time Applicant pled guilty to a third-degree-felony level of possession of cocaine, the forensic laboratory had already determined that, in reality, he had possessed only a state-jail-felony amount. Apparently neither the prosecutor nor Applicant was aware of that lab result at the time of the plea. Today, the Court grants Applicant relief on the theory that his guilty plea was involuntary, under *Ex parte Mable*, 443 S.W.3d 129 (Tex. Crim. App. 2014). In *Mable*, because the drugs had not been analyzed by the crime lab by the time of the guilty plea, neither party was aware that such testing would later reveal that the applicant had not in fact possessed "any illicit materials." *Id*. In the instant case, the forensic lab was aware that Applicant had not possessed a third-degree-felony-requisite amount of cocaine before

Applicant ever pled guilty, even if Applicant and the prosecutor were not. But that does not necessarily render Applicant's guilty plea *involuntary*.

"A defendant may have a sufficient factual awareness" of the State's case against him to render his guilty plea adequately informed to satisfy the constitutional requirement of voluntariness "despite laboring under misapprehensions." *Ex parte Broussard*, 517 S.W.3d 814, 817 (Tex. Crim. App. 2017). "[T]he voluntariness of a defendant's guilty plea is not contingent upon his awareness of the full dimension of the prosecution's case." *Ex parte Palmberg*, 491 S.W.3d 804, 809 (Tex. Crim. App. 2016). "[A]s long as he has sufficient awareness of his circumstances—including an awareness that some facts simply remain unknown to him or are undetermined as of the time of the plea—his potentially unwise plea is still a voluntary one." *Id*. "[I]f a known unknown is discovered to be different than the defendant estimated, it does not necessarily entitle him to relief from his agreement with the State because his estimation turned out to be wrong." *Broussard*, 517 S.W.3d at 818.

Here, at the time that Applicant entered the plea, both parties were content to proceed under the assumption that he had possessed a third-degree-felony amount of cocaine. Neither the prosecutor nor Applicant was aware that the forensic lab testing had already refuted that assumption. Thus, there was a meeting of the minds with respect to this known-unknown—whether actual laboratory analysis would confirm a third-degree-felony quantity of cocaine. Applicant does not contend that what he possessed "did not actually contain any illicit materials[,]" as was the case in *Mable*. 443 S.W.3d at 130. "It was the complete lack

of illicit substances that qualified as a 'crucial' fact in *Mable*'s involuntary-plea calculus." *Broussard*, 517 S.W.3d at 820 (distinguishing *Mable*, 443 S.W.3d at 131). That is not what happened in this case. Yet the Court grants Applicant relief—without endeavoring to explain why it should be *Mable*, not *Broussard*, that controls.

It is true that, in *Palmberg*, we acknowledged that an applicant might nevertheless prevail on an involuntary plea claim if he can show that the prosecutor affirmatively misled him about the nature of the evidence against him. *See* 491 S.W.3d at 810 ("All of this is not to say that we would never grant an uninformed [a]pplicant relief. If an applicant was led to believe that the substance could definitively be tested due to misrepresentations by the State, . . . then his plea might be constitutionally challengeable."); *Broussard*, 517 S.W.3d at 817 ("[A] guilty plea induced by the State's misrepresentation . . . is involuntary and may be withdrawn."). There is no indication here, however, that the prosecutor was aware of the forensic lab result. Before we could grant Applicant relief on this prosecutorial-misconduct theory of involuntariness, we would have to determine whether the forensic lab's knowledge of the test results is imputable to the State, as it might be under a claim predicated on *Brady v. Maryland*, 373 U.S. 83 (1963). The Court today makes no such inquiry.

As for *Brady* itself, Applicant has failed to raise any such claim in his writ application. We therefore have no occasion potentially to impute the forensic lab's knowledge to the prosecutor under that specific due process theory. *See Brady*, 373 U.S. at 87 ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request

violates due process where the evidence is material either to guilty or to punishment, irrespective of the good faith or bad faith of the prosecution."); *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."). Moreover, even had Applicant raised a *Brady* claim, before granting relief under that theory, the Court would be obliged to decide for certain whether "the constitutional mandate to disclose exculpatory evidence to defendants under *Brady v. Maryland* extends to the plea bargaining stage of a prosecution"—a legal question the answer to which remains subject to conjecture. *Palmberg*, 491 S.W.3d at 814–15 & n.18.

Finally, even if I thought that *Mable* rather than *Broussard* dictated the proper answer to Applicant's involuntary plea claim, I would, like Judge Keasler and Judge Hervey, opt at this point to overrule *Mable*. *See Ex parte Saucedo*, 576 S.W.3d 712, 714–20 (Tex. Crim. App. 2019) (Keasler, J., concurring, joined by Hervey and Yeary, JJ.) (arguing that subsequent case law has demonstrated that *Mable* was mistaken to rely upon a theory of involuntariness, and that its rationale has proven to cause anomalous results as applied to the facts of subsequent cases).

Overruling *Mable* would not necessarily mean that Applicant could not obtain relief. Although the Court today does not acknowledge it, Applicant's writ application makes another due process claim that does not assert that his plea was involuntary. Instead, it relies upon an alternative basis for relief that Judge Keasler acknowledged in *Saucedo*—a "guilty

only of a lesser-included offense" variation on an *Elizondo* claim, by which "[t]he applicant must show, by clear and convincing evidence, that no reasonable juror would have convicted him of the greater offense, or made findings consistent with the heightened sentence, in light of the new evidence." 576 S.W.3d at 720 (citing *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996)). Before the Court could grant Applicant relief on the basis of this alternative due process theory, however, we would have to address at least one significant hurdle. If nothing else, we would have to determine whether the evidence was "new" in contemplation of this "guilty-only-of-a-lesser-offense" standard, given that the cocaine had already been tested by the lab and found to be of a deficient quantity to support a third-degree felony conviction well before Applicant entered his guilty plea.

Because the Court grants relief in this case without confronting, much less surmounting, any of these unavoidable obstacles, I respectfully dissent.

FILED: October 2, 2019
PUBLISH