

# In the Court of Criminal Appeals of Texas

Nos. WR-93,347-02, WR-93,347-03

EX PARTE GREGORY SCOTT SIPPEL,

*Applicant*

On Applications for Writs of Habeas Corpus
In Cause Nos. 1430076-A and 1430077-A
In the 180th District Court
Harris County

YEARY, J., filed a dissenting opinion.

In July of 2014, Applicant pled guilty to two second-degree felony drug offenses: (1) possession with intent to deliver "a material, compound, mixture, [or] preparation containing not more than 15 milligrams of dihydrocodeinone (hydrocodone) per dosage unit, with one or more active nonnarcotic ingredients in recognized therapeutic

amounts, weighing at least 28 grams but less than 200 by aggregate weight, including any adulterants and dilutants"; and (2) possession with intent to deliver 4-200 grams of heroin.[1] In accordance with his plea agreements, the convicting court sentenced Applicant to six years' imprisonment for both offenses, to run concurrently. At the time of his plea, no laboratory testing of the substances in Applicant's possession had occurred.

A month after Applicant's plea, in August of 2014, the Harris County Institute of Forensic Sciences (HCIFS) issued its laboratory analysis of the evidence in Applicant's cases. The report indicates the presence of no hydrocodone but approximately 0.44 grams of Alprazolam, a different Penalty Group 3 controlled substance,[2] and less than one gram of heroin. These results were not shared with Applicant until nearly eight years after his plea, when the Harris County District Attorney sent Applicant a notice of the variance between his charges and the lab results.

---

[1] *See* TEX. HEALTH & SAFETY CODE §§ 481.104(a)(4) (designating as a Penalty Group 3 controlled substance "a material, compound, mixture, or preparation containing limited quantities of the following narcotic drugs or any of their salts: . . . not more than 15 milligrams [of dihydrocodeinone (hydrocodone)] per dosage unit, with one or more active, nonnarcotic ingredients in recognized therapeutic amounts"), 481.114(c) (establishing possession with intent to deliver "28 grams or more but less than 200 grams" of a Penalty Group 3 or 4 controlled substance as a second-degree felony); TEX. HEALTH & SAFETY CODE §§ 481.102(2) (designating heroin as a Penalty Group 1 controlled substance), 481.112(d) (establishing possession with intent to deliver "four grams or more but less than 200 grams" of a Penalty Group 1 controlled substance as a first-degree felony).

[2] *See* TEX. HEALTH & SAFETY CODE § 481.104(a)(2) (designating Alprazolam as a Penalty Group 3 controlled substance).

With the assistance of counsel, Applicant filed the instant applications for writs of habeas corpus in September of 2023. In his -02 writ application, challenging his possession with intent to deliver the hydrocodone conviction, Applicant alleges: (1) that his plea was involuntary because "lab reports disclosed after his plea indicate [that] Applicant did not possess the controlled substance hydrocodone"; and (2) for the same reason, that he is actually innocent. In his -03 writ application, challenging his possession with intent to deliver heroin conviction, Applicant argues that his plea was involuntary because "Applicant could not have made a voluntary and intelligent choice among alternative courses of action because he did not know that he only possessed a trace amount of [heroin], not 4 grams or more." The Court agrees that Applicant's pleas were involuntary, and grants him relief from both of his convictions under *Ex parte Mable*, 443 S.W.3d 129 (Tex. Crim. App. 2014). Majority Opinion at 2.

## I. INVOLUNTARY PLEA

For reasons I have often explained, I would not grant any applicant relief under *Mable*, because *Mable* was wrongly decided and should be overruled.[3] Applicant waived indictment and pled guilty when

---

[3] *See Ex parte Warfield*, 618 S.W.3d 69, 72–73 (Tex. Crim. App. 2021) (Yeary, J., concurring) ("*Mable* should be overruled. As Judge Keasler aptly explained in his concurring opinion in *Saucedo*, so long as an accused enters a guilty plea with an awareness of what he does not know, it cannot be said that he pled involuntarily.") (citing *Ex parte Saucedo*, 576 S.W.3d 712, 719 (Tex. Crim. App. 2019) (Keasler, J., concurring)); *Ex parte Hooper*, 685 S.W.3d 152, 155 (Tex. Crim. App. 2024) (Yeary, J., dissenting) ("I reaffirm my belief today that this Court should overrule *Mable* because it stands for the erroneous proposition that subsequent factual developments, without any 'suggestion that [the applicant] was fraudulently misled or coerced into pleading guilty or

neither he nor the State knew what testing of the evidence in his cases might reveal. This "ignorance of facts he 'knew . . . he did not know'" does not now, retroactively, render his pleas involuntary. *Ex parte Saucedo*, 576 S.W.3d 712, 719 (Tex. Crim. App. 2019) (Keasler, J., concurring) (quoting *Ex parte Palmberg*, 491 S.W.3d 804, 810 (Tex. Crim. App. 2016)). Moreover, there is no evidence that Applicant's pleas were involuntary at the time he made them—*i.e.*, there is no evidence that he was "fraudulently misled or coerced into pleading guilty or that his plea counsel was ineffective." *Id.* at 721 (Keasler, J., concurring). I would not grant Applicant relief from either of his convictions on the ground of involuntary plea.[4]

## II. DUE PROCESS AND DUE COURSE OF LAW

My quarrel with *Mable* aside, I have sometimes agreed that applicants in similar cases may be entitled to post-conviction relief on grounds of due process and due course of law. As I wrote in *Ex parte Ohlemacher*:

> When undisputed new facts that were inaccessible to both parties at the time of a trial or plea irrefutably demonstrate that an Applicant is *not guilty* of the offense for which a judgment of conviction has been entered, the right to due

---

that [her] plea counsel was ineffective[,]' may retroactively render an applicant's plea of guilty involuntary") (quoting *Saucedo*, 576 S.W.3d at 721 (Keasler, J., concurring)).

[4] Nor was Applicant's plea with respect to his hydrocodone charge involuntary simply because he possessed a different Penalty Group 3 controlled substance than the one that he pled guilty to possessing. *Ex parte Broussard*, 517 S.W.3d 814, 820 (Tex. Crim. App. 2017) ("[G]uilty pleas that are otherwise valid do not become invalid merely because laboratory tests determine the defendant was carrying a different illicit substance.").

process and due course of law are implicated. But for the inaccessibility of those newly discovered facts, a rational jury or judge would *not* have entered either a finding or a judgment of guilt.

666 S.W.3d 528, 528 (Tex. Crim. App. 2023) (Yeary, J., concurring). Thus, when subsequent analysis of the evidence in a controlled substance case proves that the applicant should have been convicted only of a different offense, due process demands that the applicant's false judgment be corrected. I would not rule out that Applicant may ultimately be entitled to this form of relief in either of these cases. But I believe remand to develop the record is necessary before the Court can confidently determine whether Applicant is entitled to any relief.

### III. REMAND

The current state of the record in these cases give me pause. I am particularly disturbed by the fact that Applicant pled guilty to possessing a minimum of 28 grams of hydrocodone when the laboratory testing apparently shows that he possessed less than one gram of a different Penalty Group 3 controlled substance. Almost as disturbing is the fact that Applicant pled guilty to possessing at least four grams of heroin when the lab testing now shows he possessed less than one gram of that substance. As the ultimate fact-finder in these circumstances, the Court should be extremely interested in determining how these kinds of mistakes, if they were truly mistakes, happened. To do that, I would remand this application to the habeas court with instructions to make supplemental findings and conclusions with respect to the following questions:

- How, and by whom, was the substance in cause number

1430076 initially determined to be hydrocodone? How was that substance initially determined to weigh "at least 28 grams but less than 200 grams" by aggregate weight?

- How, and by whom, was the substance in cause number 1430077 initially determined to be heroin? How was that substance initially determined to weigh "four grams or more but less than 200 grams" by aggregate weight?

- Was all of the evidence that was suspected to be, or suspected to contain, illicit substances in these cases delivered to the HCIFS for analysis, or was any portion of the evidence retained by the arresting agency?

- The HCIFS laboratory report indicates that Items 1A1, 1AA, and 1B1 were not analyzed. Why were these items not analyzed? What assurance is there that these items do not contain any controlled substances?

- The HCIFS laboratory report indicates that Item 2 was a "Ziplock bag containing (63) blue" tablets. The report states that "A hypergeometric sampling plan was used for the analysis of Item 2. The sampling plan provides a 95% confidence that at least 75% of the 63 tablets showed no compound confirmed by standard procedures." What assurance does this result provide that the remaining 25%, (or sixteen) of the 63 tablets do not contain any controlled substances?

- According to the current record, HCIFS issued its laboratory report on August 6, 2014, but the results of that report were not disclosed to Applicant until the Harris County District Attorney's letter, dated April 7, 2022. What, if any, reason justifies the nearly eight-year delay in disclosing this, at least, apparently exculpatory evidence to Applicant?

Answers to these questions must be sought and must be obtained. Without them, how can we have confidence that what we are presented

with today is accurate? The distinctions between what Applicant was charged with and convicted of, on his own plea, versus what we are now told was the case are enormous. If the original charges were mistaken, we must know how and why such errors could have occurred. Also, it should go without saying that someone should be held accountable for errors of this magnitude. On the other hand, because the distinctions are so great, and in light of the fact that this is now ten years after Applicant entered his pleas, I am left with questions about whether there might exist some reasonable explanation for the discrepancies we are today presented with that might ultimately justify the Court denying relief on Applicant's claims.

Without answers to these questions, the record, in my view, is insufficiently complete to determine whether Applicant is or is not entitled to relief.

I respectfully dissent.

**FILED:**                                          August 21, 2024
**PUBLISH**