# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00748-CR

---

**Stephen Armstrong, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 264TH DISTRICT COURT OF BELL COUNTY
### NO. 80557, THE HONORABLE PAUL L. LEPAK, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Stephen Armstrong, Jr., of possession of a controlled substance, less than one gram, and assessed his sentence at eighteenth months in state jail and a fine of $750. Tex. Health & Safety Code §§ 481.115(a), (b); Tex. Penal Code § 12.35. In three issues, Armstrong challenges the legal and factual sufficiency of the evidence supporting his conviction and complains about error in the jury charge. We will affirm the judgment of conviction.

## BACKGROUND

Officers with the Belton Police Department were called out to the Hilltop Mobile Home Park on the morning of May 13, 2019, in response to a stabbing incident. The

complainant, Andrea Andersen,[1] reported that her ex-boyfriend Armstrong, against whom she had a protective order, had climbed in through a window of her trailer home, and she had stabbed him. Officer Richard Spurgeon testified at trial that he searched and photographed the trailer. During his search, Spurgeon saw a broken phone on the floor of the trailer and found a knife one to two feet inside the door area; there did not appear to be blood on the knife.

While searching the outside of the trailer, officers noticed a path of footprints on the grass. Following the footprints, they discovered a black "wind breaker type [sic]" jacket next to an air conditioning unit underneath a window of the trailer. All of the trailer's windows were "off the ground." It had rained the night before, but although the grass, A/C unit, and side of the trailer were still wet, the jacket was dry, from which Spurgeon concluded it had not lain there long. Inside a pocket were a cell phone; lighter; stocking cap; baggie containing a white crystalline substance that appeared to be methamphetamine; and mail addressed to Armstrong, including a medical bill. Some of the mail was dated January 2019. A field test of the crystalline substance subsequently yielded a positive result for methamphetamine.

Spurgeon also testified that another officer, Sergeant William Hamilton, could be seen on a body-camera recording of the search wearing a short-sleeved shirt and that it was "fairly warm" during the daytime but "comfortable" the morning of the search. Spurgeon added that officers wear body armor underneath the shirt, which "keep[s] heat well."

Hamilton testified that he had been made aware that the "suspect," who had "fled the scene" prior to his arrival, was Armstrong. An individual saw Armstrong walking near a

---

[1] The complainant's surname is written as both "Anderson" and "Andersen" in the Reporter's Record. We will refer to her as "Andersen," the spelling used in the briefs of both parties, the witness index, and the caption immediately preceding her testimony.

highway, and Hamilton located Armstrong at a gas station near the sighting. Armstrong did not try to flee at Hamilton's approach. Although a police report described Armstrong as wearing dark pants and a white shirt, Hamilton agreed that he was wearing a black shirt when Hamilton located him. However, Hamilton clarified that he was "looking for Stephen Armstrong and [knew] him very well from many previous experiences." Armstrong insisted that he had not violated the protective order, been stabbed, or done anything wrong, but Hamilton could "see evidence on [Armstrong's] person that he'd been stabbed." Hamilton arrested Armstrong for violation of a protective order and photographed him at the jail. While there, Armstrong asked Hamilton to return his phone, which he indicated he had left at the trailer home. Hamilton returned to the trailer to search "[a]round the house." Although he acknowledged that a phone was found in the jacket, Hamilton testified that he did nothing further with the phone.

Andersen testified that Armstrong had been living with her in the three-bedroom trailer since February 2019, despite the existence of the protective order. On May 12, 2019, Armstrong, Andersen, and a friend smoked methamphetamine at the trailer. The friend left around 1 p.m., and Armstrong and Andersen spent the rest of the day smoking and arguing. The argument became physical when Andersen attempted to leave the trailer, and Armstrong tried to stop her. Andersen managed to leave, but Armstrong followed her to a friend's house. Andersen then returned to the trailer, while Armstrong stayed to speak with the friend. Andersen locked the door to the trailer because she "knew [Armstrong] was going to be insane at that point" and "feared for [her] life." Armstrong climbed through a window of the trailer and ran toward Andersen. For about an hour, he kept her from leaving, and, when she attempted to call 911, he stepped on her phone, breaking it. Andersen grabbed a knife and testified that she stabbed

3

Armstrong multiple times; Armstrong, bleeding, ran from the trailer. Andersen charged her phone and called 911 to "turn[ her]self in." She testified that the jacket found by officers belonged to Armstrong and that she had seen him wear it before.

Lindsay Hatfield, an analyst with the Texas Department of Public Safety, testified that she tested the crystals seized from the jacket and determined that they contained methamphetamine in a weight of approximately .60 grams.

The jury found Armstrong guilty of possession of less than a gram of methamphetamine. Following a hearing on punishment, it assessed his sentence at eighteen months in state jail and a fine of $750. This appeal followed.

## DISCUSSION

In three issues, Armstrong challenges the legal and factual sufficiency of the evidence proving possession and complains about an error in the jury charge.

### Legal Sufficiency

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Lang v. State*, 561 S.W.3d 174, 179 (Tex. Crim. App. 2018). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see Musacchio v. United States*, 577 U.S. 237, 243 (2016); *Johnson v. State*, 560 S.W.3d 224, 226

4

(Tex. Crim. App. 2018). In our sufficiency review, we consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *Thompson v. State*, 408 S.W.3d 614, 627 (Tex. App.—Austin 2013, no pet.); *see Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider only whether the factfinder reached a rational decision. *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018); *see Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (observing that reviewing court's role on appeal "is restricted to guarding against the rare occurrence when a fact finder does not act rationally" (quoting *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010))).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016); *see also* Tex. Code Crim. Proc. art 36.13 (explaining that "the jury is the exclusive judge of the facts"). Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Arroyo*, 559 S.W.3d at 487; *see Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we must defer to the credibility and weight determinations of the factfinder. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016); *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). When the record supports conflicting reasonable inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we

5

defer to that resolution. *Zuniga*, 551 S.W.3d at 733; *Cary*, 507 S.W.3d at 757; *see Musacchio*, 577 U.S. at 243 (reaffirming that appellate sufficiency review "does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts'" (quoting *Jackson*, 443 U.S. at 319)). We must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Clayton*, 235 S.W.3d at 778); *accord Arroyo*, 559 S.W.3d at 487. The jury is not allowed, however, to make conclusions based on speculation, which, unlike reasonable inferences, are "insufficiently based on the evidence to support a finding beyond a reasonable doubt." *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016); *see Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) ("Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented.").

Because factfinders are permitted to make reasonable inferences, "[i]t is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13); *accord Johnson*, 560 S.W.3d at 226. The standard of review is the same for direct and circumstantial evidence cases. *Jenkins*, 493 S.W.3d at 599; *Nowlin*, 473 S.W.3d at 317.

Under the Texas Health and Safety Code, an individual commits an offense if he or she "knowingly or intentionally possesses" methamphetamine in an amount of less than one gram. Tex. Health & Safety Code §§ 481.102(6), .115(a), (b). "Possession" means "actual

care, custody, control, or management." *Id*. § 481.002(38). Accordingly, to prove unlawful possession of a controlled substance, the State must prove that the accused: (1) "exercised care, control, and management over the contraband" and (2) "knew the matter was contraband." *Ex parte Lane*, 303 S.W.3d 702, 709 (Tex. Crim. App. 2009). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." Tex. Penal Code § 6.01(b).

We have explained the requirements for proving possession of contraband when the accused is not in exclusive possession or control of the place where the contraband is found:

> When an accused is not in exclusive possession and control of the place where the contraband is found, it cannot be concluded or presumed that the accused had knowledge of or control over the contraband unless there are additional independent facts and circumstances connecting or linking the accused to the knowing possession of contraband . . . . Similarly, when the contraband is not found on the accused's person or it is not in the exclusive possession of the accused, additional independent facts and circumstances must link the accused to the knowing possession of the contraband.

*Allen v. State*, 249 S.W.3d 680, 690–91 (Tex. App.—Austin 2008, no pet.). "Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs." *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). "However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., 'links'), may well be sufficient to establish that element beyond a reasonable doubt." *Id*.

7

The Court of Criminal Appeals ("CCA") has noted that the following non-exhaustive[2] list of "links"[3] may circumstantially establish the legal sufficiency of the evidence to prove knowing possession:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* at 162 n.12 (quoting *Evans v. State*, 185 S.W.3d 30, 35 (Tex. App.—San Antonio 2005), *rev'd on other grounds by Evans*, 202 S.W.3d 158). The absence of links does not constitute evidence of innocence to be weighed against the links present. *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). In performing this review, "[i]t is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct

---

[2] Additional links have been identified by our sister courts. *See e.g., Black v. State*, 411 S.W.3d 25, 28-29 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (incriminating statements made by accused connecting himself to contraband); *Villegas v. State*, 871 S.W.2d 894, 896 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (proximity of contraband to defendant's personal belongings).

[3] Although both parties' briefing used the term "affirmative links," the Court in *Evans* recognized that "affirmative" added nothing to the plain meaning of "link" and declared that, going forward, it would use "only 'link' so that it is clear that evidence of drug possession is judged by the same standard as all other evidence." *Evans v. State*, 202 S.W.3d 158, 161 n.9 (Tex. Crim. App. 2006).

and circumstantial." *Id.* at 162. The force of the links need not be such as to exclude every other alternative hypothesis except the defendant's guilt. *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995). "Whether the evidence be direct or circumstantial, 'it must establish, to the requisite level of confidence, that the accused's connection with the [contraband] was more than just fortuitous.'" *Allen*, 249 S.W.3d at 691 (quoting *Brown*, 911 S.W.2d at 747); *see Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005), *abrogated on other grounds by Robinson v. State*, 466 S.W.3d 166 (Tex. Crim. App. 2015) ("The 'affirmative links rule' is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs."). Ultimately, however, the links merely help to guide a reviewing court's analysis; the fundamental sufficiency inquiry is still the standard set forth in *Jackson*: "Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Tate*, 500 S.W.3d at 414.

Here, the jury heard evidence of the following links:

(1) Armstrong resided at the trailer outside of which the jacket containing methamphetamine was found and had been at the trailer the day before it was discovered; (2) The jacket belonged to Armstrong, and he had been seen wearing it on at least one prior occasion; (3) Armstrong had been wearing a jacket the night before the jacket in question was found but was not wearing one when he was arrested; (4) Armstrong climbed into the trailer through a window, and the jacket was found beneath one of the trailer's windows next to a path of footprints leading around the trailer; (5) the windows were "off the ground," and the jacket was next to an A/C unit providing access to the window; (6) mail addressed to Armstrong was found in a pocket of the jacket containing the methamphetamine; (7) Armstrong purchased methamphetamine on May 11th and spent May 12th, the day before the jacket was found, smoking methamphetamine provided by a friend; (8) it had rained the night before the jacket was found, and, although the grass around the jacket was wet, the jacket itself was dry, indicating that it had not lain there long; (9) a phone was found in the pocket of the jacket, and Armstrong had indicated to an officer that he had dropped his phone near the trailer; and (10)

9

Armstrong initially told the arresting officer that he had not been near the trailer nor been stabbed, despite evidence to the contrary.

Armstrong argues on appeal that "the affirmative links analysis has a chronology component" and "suggests that this . . . component attaches to every potential affirmative link." In support of his contention, Armstrong cites to cases listing links involving a temporal element. *See Damron v. State*, 570 S.W.2d 933, 936 (Tex. Crim. App. [Panel Op.] 1978) (listing whether appellant was at place searched at time of search, whether other persons were present and shown to be living there, and whether appellant was in possession of contraband at time of arrest as links to be considered in determining possession); *Villegas*, 871 S.W.2d at 896 ("whether the defendant was at the place searched at the time of the search" and "whether there were other persons present at the time of the search"); *Ex parte Stowe*, 744 S.W.2d 615, 617 (Tex. App.—Houston [1st Dist.] 1987, no pet.) (listing *Damron* links, among others). While it is true that various putative links listed in these and other cases may include "a chronology component," no list is exhaustive, and other links do not include such a component. Moreover, as noted above, the nonexistence of certain links is "not evidence of innocence" to be balanced against the links present in this case. *James*, 264 S.W.3d at 219 (citing *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976)). Instead, we must focus on the "logical force" of the "combined pieces of circumstantial evidence in this case," together with "reasonable inferences from them." *Evans*, 202 S.W.3d at 166. Insomuch as Armstrong maintains that we should read a temporal limitation into a link where none is expressly stated, we find nothing in the case law to support his assertion.

Armstrong also argues that when contraband is "hidden," the State "must offer evidence that the defendant knew of the existence of the hidden location and its contents." In support of his argument, he cites to our previous decision in *Allen v. State*, 249 S.W.3d 680, 694 (Tex. App.—Austin 2008, no pet.), as well as two opinions from our sister courts, *Roberts v. State*, 321 S.W.3d 545, 549 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd), and *Medina v. State*, 242 S.W.3d 573, 576 (Tex. App.—Waco 2007, no pet.). His argument, however, misconstrues the opinions. In *Allen*, we noted only that "[w]here the contraband is hidden or secreted, the State . . . must *address* whether the accused knew of the existence of the secreted place and its contents" and must "link the accused to the contraband in such a manner that a reasonable inference arises that the accused knew of its existence and its whereabouts and that the object possessed was contraband." 249 S.W.3d at 694 (internal citations omitted) (emphasis added). The conclusions of our sister courts were similarly nuanced. *See Roberts*, 321 S.W.3d at 549 ("[T]he State must show additional facts and circumstances linking the accused to the contraband to show the accused's knowledge of or control over the contraband."); *Medina*, 242 S.W.3d at 576 ("[T]he State must address whether the defendant knew of the existence of the secret place and its contents.").

Here, the State, in presenting evidence of the links listed above, sufficiently tied Amstrong to the methamphetamine in such a manner that the jury could have reasonably inferred that he knew of its existence, location, and nature as contraband. Viewing the evidence in the light most favorable to the verdict, the logical force of the evidence, coupled with reasonable inferences therefrom, was sufficient to establish beyond a reasonable doubt that Armstrong exercised actual care, custody, control, or management of the methamphetamine and knew that it

11

was in fact methamphetamine. The jury was not required to believe evidence to the contrary. *See Evans*, 202 S.W.3d at 166. And although Armstrong attempted in closing argument to impugn Andersen's credibility and suggest that she planted the jacket and methamphetamine, it was the jury's prerogative as the exclusive judge of facts to make decisions on the weight and credibility of the evidence. *See Zuniga*, 551 S.W.3d at 733; Tex. Code Crim. Proc. art. 36.13. Assuming that the jury resolved conflicts in the evidence and drew reasonable inferences in a manner supporting the verdict, we cannot conclude that it reached an irrational decision. *Arroyo*, 559 S.W.3d at 487; *see Jackson*, 443 U.S. at 318. Consequently, we overrule Armstrong's first issue.

### Factual Sufficiency

On appeal, and citing Article V, Section 6 of the Texas Constitution and Article 44.25 of the Code of Criminal Procedure, Armstrong contends that *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), which overruled the factual-sufficiency standard, should be reconsidered.

However, we are bound to follow the CCA's holding in *Brooks* and its progeny. "When the Court of Criminal Appeals has deliberately and unequivocally interpreted the law in a criminal matter, we must adhere to its interpretation under the dictates of vertical stare decisis." *Mason v. State*, 416 S.W.3d 720, 728 n.10 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *see Temple v. State*, 342 S.W.3d 572, 628 (Tex. App.—Houston [14th Dist.] 2010) (Brown, J., concurring), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013) ("Even if *Brooks* were an abomination, it is not the role of lower courts to rein in our courts of last resort . . . . When the Supreme Court of Texas and the Court of Criminal Appeals interpret our state's constitution, we

12

must follow. That's how our system works."); *see also State ex rel. Wilson v. Briggs*, 351 S.W.2d 892, 894 (Tex. Crim. App. 1961) ("The Court of Criminal Appeals is the court of last resort in this state in criminal matters. This being so, no other court of this state has authority to overrule or circumvent its decisions, or disobey its mandates."). Because the CCA has consistently and stridently disavowed the factual-sufficiency standard, we will not now apply it in this case.

**Jury Charge Error**

In his third issue, Armstrong contends that the trial court failed to instruct the jury properly regarding the culpable mental states applicable to the offense of possession of a controlled substance. Armstrong alleges that the charge was erroneous because it included definitions of culpable mental states relating to result-oriented offenses or, alternatively, because it failed to tailor the applicable definitions to the nature and circumstances of the proscribed conduct.

A trial court is statutorily obligated to instruct the jury on the "law applicable to the case." *See* Tex. Code Crim. Proc. art. 36.14; *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018); *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017). The jury charge should tell the jury what law applies and how it applies to the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). The trial court's duty to instruct the jury on the "law applicable to the case" exists even when defense counsel fails to object to inclusions or exclusions in the charge. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013) (citing *Taylor v. State*, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011)). The trial court is "ultimately

responsible for the accuracy of the jury charge and accompanying instructions." *Mendez,* 545 S.W.3d at 552 (quoting *Delgado*, 235 S.W.3d at 249).

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Arteaga*, 521 S.W.3d at 333; *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When no error exists, as here, the inquiry ends, and we need not address the question of harm. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015).

The Penal Code delineates three "conduct elements" that can be involved in an offense: (1) the nature of the conduct, (2) the result of the conduct, and (3) the circumstances surrounding the conduct. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989); *see* Tex. Penal Code § 6.03. The statutory definitions of the culpable mental state in a jury charge must be tailored to the conduct elements of the offense. *Price*, 457 S.W.3d at 441; *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994). A trial court errs when it fails to limit the definitions of the culpable mental states to the conduct element or elements involved in the particular offense. *Price*, 457 S.W.3d at 441; *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995); *Cook*, 884 S.W.2d at 491.

There is no agreement among Texas courts regarding the classification of possession of a controlled substance by its constituent conduct elements. *See Aguilera v. State*, No. 07-13-00280-CR, 2015 WL 4594118, at *3 (Tex. App.—Amarillo July 30, 2015, pet. ref'd) (mem. op., not designated for publication) ("Our courts have not placed the offense of possession of a controlled substance within a single category as a nature-, result- or circumstances-oriented offense."); *Harris v. State*, No. 02-12-00091-CR, 2014 WL 1389756 (Tex. App.–Fort Worth

14

Apr. 10, 2014, pet. ref'd) (mem. op., not designated for publication) ("Possession of a controlled substance has not been clearly categorized as either result or conduct oriented."); *see also Ex parte Saucedo*, 576 S.W.3d 712, 727 n.13 (Tex. Crim. App. 2019) (Keller, J., dissenting) (recognizing that "at least one court of appeals has concluded that possession of a controlled substance can qualify as a result-oriented offense for the purpose of instructing the jury"); *Allen*, 249 S.W.3d at 690 ("Where the offense is the possession of a controlled substance, the proscribed conduct is possession."); *Seals v. State*, 187 S.W.3d 417, 423–24 (Tex. Crim. App. 2005) (Cochran, J., dissenting) ("The gravamen of the offense is the quantity of the usable drug."); *Watson v. State*, 752 S.W.2d 217, 222 (Tex. App.—San Antonio 1988, pet. ref'd) ("The *mens rea* requirement of a possessory offense is knowledge by a defendant that his conduct or the circumstances surrounding his conduct constitutes possession of a controlled substance."); *Adams v. State*, 744 S.W.2d 622, 628 (Tex. App.—Fort Worth 1987, pet. ref'd) ("[P]ossession may be a 'result oriented' offense, since many cases have held that the defendant's actions resulted in possession."). *But see Penrice v. State*, No. 14-93-00326-CR, 1995 WL 458954, at *4 (Tex. App.—Houston [14th Dist.] Aug. 3, 1995, no pet.) (not designated for publication) ("Appellant does not cite any cases nor do we find any cases which hold that possession of a controlled substance is a result oriented crime.").

Where the categorization of an offense is undecided, a trial court does not err by including the complete statutory definitions of "intentionally" and "knowingly." *See Baker v. State*, 94 S.W.3d 684, 691 (Tex. App.—Eastland 2002, no pet.) (explaining that "[w]here an offense is not clearly categorized with respect to the conduct elements required, the trial court may submit the full statutory definitions of 'intentionally' and 'knowingly'"); *Murray v. State*,

804 S.W.2d 279, 281 (Tex. App.—Fort Worth 1991, pet. ref'd) ("[W]hen an offense is not clearly categorized as either a 'result' or a 'nature of the conduct' type offense, with respect to the intent and knowledge required, . . . the trial court may submit statutory definitions of 'intentional' and 'knowingly' because both definitions allow the jury to consider the nature of the offender's conduct or the results of his conduct."); *accord Saldivar v. State*, 783 S.W.2d 265, 267–68 (Tex. App.—Corpus Christi–Edinburg 1989, no pet.). Because the CCA has not definitively ruled on the conduct-elements classification of possession of a controlled substance, the trial court here did not err in including the definitions of "intentionally" and "knowingly" as they apply to result-oriented offenses.

We therefore overrule Armstrong's third issue.

## CONCLUSION

Having overruled each of Armstrong's issues, we affirm the trial court's judgment of conviction.

_____

Edward Smith, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed: October 15, 2021

Do Not Publish